UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| MARIO DION WOODWARD, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 18-1249 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 27, 32 |
| | : | | |
| UNITED STATES MARSHALS SERVICE, | : | | |
| | : | | |
| Defendant. | : | | |

### MEMORANDUM OPINION

**DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

### I.  INTRODUCTION

In this case brought pursuant to the Freedom of Information Act ("FOIA"), Plaintiff Mario Dion Woodward seeks records pertaining to the use of any cell phone tracking technology during the criminal investigation that led to his conviction of capital murder and death sentence. A trial judge in Alabama imposed the ultimate punishment, overriding a jury recommendation of a life sentence without the possibility of parole, after Plaintiff was convicted for the murder of Officer Keith Houts of the Montgomery Police Department.  Plaintiff believes that authorities investigating the shooting of Officer Houts, including members of Defendant United States Marshals Service ("USMS"), may have used cellphone tracking technology—specifically, a device called a "stingray"—in furtherance of that investigation.  Plaintiff submitted a FOIA request for records regarding the use of cellphone tracking technology during USMS's investigation.  To date, USMS has produced 300 pages of records subject to withholdings pursuant to FOIA Exemptions 6, 7(C), 7(E), and 7(F).  The parties have filed cross motions for summary judgment regarding the applicability of these FOIA Exemptions.  For the reasons set

forth below, the Court denies USMS's motion for summary judgment and denies Plaintiff's cross motion for summary judgment.

## II.  BACKGROUND

This case stems from the shooting of Officer Keith Houts of the Montgomery Police Department on September 28, 2006.  *See* Compl. ¶ 3, ECF No. 1.  On that day, Officer Houts was shot repeatedly without warning after a routine traffic stop.  *Id.*; *see also id.* ¶ 13.  "In the hours following the shooting, the police determined that [Plaintiff], already a suspect, was likely in Atlanta, and a 'be-on-the-lookout' alert was issued for [Plaintiff]."  *Id.* ¶ 3.  The day after the shooting, "Agent Joe Parker of the Atlanta USMS investigated an address provided by Alabama authorities" and "saw [Plaintiff] at a gas station."  *Id.* ¶ 17.  Agent Parker arrested Plaintiff for the shooting of Officer Houts.  *Id.*  Plaintiff was subsequently indicted on two counts of capital murder, tried, and convicted.  *Id.* ¶ 3.  At sentencing, the judge overrode the jury's recommendation of a sentence of life without the possibility of parole and, instead, imposed a death sentence.  *Id.*  Plaintiff alleges that he "has a good-faith basis to believe that the investigation which preceded his arrest may have involved the use of a cell-site simulator, more colloquially known by the trade name 'stingray,' a device capable of . . . intercepting cell phone metadata and tracking a cell phone user's location."  *Id.* ¶ 4.  He also alleges the he "has a good-faith basis to suspect the taint of police and prosecutorial misconduct in the investigation which led to his arrest."  *Id.* ¶ 5.

In an effort to secure documents that could be used to aid in securing postconviction relief, Plaintiff submitted a FOIA request for records.  *See id.* ¶¶ 6, 21, 31.  Plaintiff requested:

> All records in any way relating to, pertaining to, or mentioning the use of any cell phone tracking technology during the investigation of the shooting death of Officer Keith Houts on September 28, 2006, by state and/or federal law enforcement located in the State of Alabama and/or the State of Georgia, including but not

2

>limited to the use of any GPS or "stingray" technology by the Alabama Bureau of Investigations or the U.S. [Marshals] located in Alabama and Georgia.

Compl. Ex. A at 3, ECF No. 1-1. The request further stated that the records were "being requested in connection with [Plaintiff's] defense." *Id.* After USMS did not produce any responsive records and denied Plaintiff's administrative appeal, Plaintiff filed this lawsuit. *See* Compl. ¶¶ 33–51.

Since the filing of the Complaint, USMS has produced 300 pages of responsive records subject to withholdings under FOIA Exemptions 6, 7(C), 7(E), and 7(F). Def.'s Statement of Materials Facts ¶ 5, ECF No. 27-1; *see also* ECF No. 33-3. The parties have conferred and narrowed their dispute to three issues: (1) "Redaction of names and contact information for law enforcement officers, under FOIA exemption (b)(6), (b)(7)(C), and (b)(7)(F)[;]" (2) "Redaction of references to cell phone tracking technology, including but not limited to the use of a 'stingray' or similar technology, and the involvement of specialists in such technology, to the extent they exist, under FOIA exemptions (b)(6), (b)(7)(C), (b)(7)(E), and (b)(7)(F)[;]" and (3) the "redaction, in their entirety, of pages 23, 38, 40, 41-53, and 72-137 of the USMS' production." Joint Status Rep. at 2, ECF No. 26.

In support of its motion for summary judgment, USMS submitted the declaration of Charlotte Luckstone, an Associate General Counsel in the Office of General Counsel of USMS. *See* Luckstone Decl. ¶ 1, ECF No. 27-3. Ms. Luckstone's declaration includes a *Vaughn* Index, attached as Exhibit 2, that purports to describe the records produced to Plaintiff and the applicability of the claimed FOIA exemptions. *See* Luckstone Decl. Ex. 2 ("*Vaughn* Index"). Briefing on the parties' cross motions for summary judgment is complete and the motions are ripe for decision. *See* USMS's Mem. Supp. Mot. Summ. J. ("USMS's Mem."), ECF No. 27-2; Pl.'s Mem. Supp. Cross Mot. Summ. J. ("Pl.'s Mem."), ECF No. 32-1; Pl.'s Opp'n USMS's

Mot. Summ. J. ("Pl.'s Opp'n"), ECF No. 33; USMS's Reply Supp. Mot. Summ. J. & Opp'n Pl.'s Cross Mo. Summ. J. ("USMS's Reply"), ECF No. 34.

### III. LEGAL STANDARD

The purpose of FOIA "is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). FOIA requests thus provide individuals with the opportunity to obtain access to federal agency records, except to the extent that such records are protected from public disclosure by one of nine exemptions. *See* 5 U.S.C. § 552(a)(3), (a)(4)(B), (b), (c); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 738 (D.C. Cir. 2017). Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see, e.g.*, *Alyeska Pipeline Serv. Co. v. U.S. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988) (concluding that unsubstantiated claims of factual controversies cannot defeat a summary judgment decision in a FOIA case). FOIA cases are typically resolved through summary judgment because in FOIA cases there is rarely any factual dispute, instead, these cases center on how the law is applied to the records at issue. *See Pinson v. U.S. Dep't of Justice*, 236 F. Supp. 3d 338, 352 (D.D.C. 2017) (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)) ("FOIA cases typically and appropriately are decided on motions for summary judgment."); *see also Gray v. Southwest Airlines Inc.*, 33 Fed. Appx. 865, 868 (9th Cir. 2002) (citing *Schiffer v. FBI*, 78 F.3d 1405, 1409 (9th Cir. 1996)). Accordingly, in a FOIA suit, summary judgment is appropriate "if no material facts are genuinely in dispute and the agency demonstrates 'that its

search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information.'" *Prop. of the People, Inc. v. Off. of Mgmt. and Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (quoting *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017)).

## IV.  ANALYSIS

As noted above, the parties have narrowed their dispute to USMS's application of FOIA Exemptions 6, 7(C), 7(E), and 7(F).[1]  First, USMS invokes Exemptions 6,[2] 7(C), and 7(F)[3] to withhold the names, contact information, and other identifying information for law enforcement officers and other third-party individuals[4] that appear throughout the production.  *See generally Vaughn* Index.  Upon review of USMS's submission, application of these three exemptions is generally coextensive.[5]  *See id.*  As such, and for reasons explained below, the Court need only evaluate the applicability of Exemption 7(C) for the privacy-based withholdings.  *See Nishnic v.*

---

[1] Plaintiff does not contest the adequacy of USMS's search for responsive records.  *See* Pl.'s Opp'n at 1 ("Plaintiff does not challenge USMS'[s] search for responsive documents, and only a particular subset of the USMS'[s] redactions and withholdings remains in dispute.").

[2] Exemption 6 protects from disclosure records that are "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).

[3] Exemption 7(F) allows an agency to withhold records "compiled for law enforcement purposes" the disclosure of which "could reasonably be expected to endanger the life or physical safety of any individual."  5 U.S.C. § 552(b)(7).

[4] Although the parties' briefing is not entirely clear on this point, the Court understands that Plaintiff only objects to the redactions applied to identifying information for law enforcement officers and government personnel.  *See* Joint Status Rep. at 2; Pl.'s Opp'n at 11 (discussing privacy interests of federal employees).  The Court therefore limits its discussion accordingly.

[5] The Court has reviewed USMS's production and determined that all redactions applied pursuant to Exemption 7(F) also were applied pursuant to Exemption 7(C), though not every invocation of Exemption 7(C) carries an Exemption 7(F) designation.  *See* ECF No. 33-3.

*U.S. Dep't of Justice*, 671 F. Supp. 776, 787 (D.D.C. 1987) (limiting analysis to Exemption 7(C) where both Exemption 6 and 7(C) were claimed).  Second, USMS invokes Exemption 7(E) to withhold information that it claims would disclose law enforcement techniques or procedures, the disclosure of which could reasonably be expected to risk circumvention of the law.  The Court reviews USMS's invocation of Exemptions 7(C) and 7(E) in turn.

### A.  Exemption 7(C)

FOIA Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes"[6] that, if disclosed, "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7).  Where, as here, there is no dispute that the records at issue were compiled for law enforcement purposes, a court's task "is 'to balance the [] privacy interest against the public interest in disclosure.'"  *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice ("CREW")*, 746 F.3d 1082, 1091 (D.C. Cir. 2014) (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004)).  Unlike other exemptions, when Exemption 7(C) is invoked a FOIA requester must "show that the public interest sought to be advanced is a significant one" and "show the information is likely to advance that interest."  *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 387 (D.C. Cir. 2007) (citing *Favish*, 541 U.S. at 172)).  Courts therefore examine the private interest at stake, the proffered public interest in disclosure, and balance the competing interests to determine if the information is properly withheld.  *See CREW*, 746 F.3d at 1091–96.

---

[6] Plaintiff agrees that all the records at issue were compiled for law enforcement purposes, fulfilling the threshold requirement of FOIA Exemption 7.  *See* Pl.'s Opp'n at 9 ("Plaintiff does not contest that the records at issue were 'compiled for law enforcement purposes.'" (quoting 5 U.S.C. § 552(b)(7)).

1. Private Interest

The release of personally identifiable information contained in records compiled for law enforcement purposes implicates clear privacy interests. The D.C. Circuit has "consistently supported the nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants." *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003); *see also Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1174 (D.C. Cir. 2011) ("[T]he 'mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation.'" (quoting *Schrecker*, 349 F.3d at 666)); *Dillon v. U.S. Dep't of Justice*, 444 F. Supp. 3d 67, 99–101 (D.D.C. 2020) (concluding Exemption 7(C) properly applies "to both FBI personnel and non-FBI government employees acting in the scope of their duties"). In fact, the D.C. Circuit has held "categorically that, unless access to the names and addresses of private individuals appearing in the files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1206 (D.C. Cir. 1991).

USMS's submission identifies the strong privacy interests at stake in this case. In her declaration, Ms. Luckstone explains that "the personally identifiable information of law enforcement officers and government employees (such as, USMS employees) was withheld" because disclosure "could subject law enforcement officers and other government personnel to harassment and unwelcome contact." Luckstone Decl. ¶ 24. She states that "[f]ederal employees and law enforcement officers have a recognized privacy interest in not being publicly associated with law enforcement investigations and related proceedings." *Id.*; *see also Vaughn*

Index at 3–4 (explaining withholdings of personally identifying information throughout the production). USMS's explanation of the privacy interests at stake in this case aligns with the interests identified by the D.C. Circuit as worthy of protection under Exemption 7(C). *See Roth*, 642 F.3d at 1174 (D.C. Cir. 2011); *Schrecker*, 349 F.3d at 661 (D.C. Cir. 2003). Indeed, Plaintiff does not dispute that release of personally identifying information "can implicate cognizable privacy interests." Pl.'s Opp'n at 9–10. As such, the Court concludes that disclosure of the personally identifying information in USMS's files implicates strong privacy interests.

2. Public Interest

Plaintiff identifies two potential public interests in disclosure. First, Plaintiff suggests that the records relate broadly to "law enforcement['s] use of cell phone tracking devices." Pl.'s Mem. at 7; *see also* Pl.'s Opp'n at 10. Plaintiff claims that the withheld names and identifying information "would contribute significantly to public understanding of the USMS'[s] workings and conduct" and "open doors to further inquiry into the USMS'[s] role in the Woodward investigation and use of cell phone tracking technology." Pl.'s Opp'n at 10–11. Plaintiff cites *Am. Civil Liberties Union v. Dep't of Justice ("ACLU")* in support, implying that USMS's cell phone tracking capabilities in his case is a matter "of substantive law enforcement policy." *Id.* at 10 (quoting 655 F.3d 1, 12–15 (D.C. Cir. 2011)). Built into Plaintiff's argument is an allegation of government misconduct related to cell phone tracking technology. *See* Pl.'s Mem. at 7 ("[T]he public as a whole . . . has a strong interest in uncovering the names of government agents who may be able to provide information in support of related litigation, particularly where government misconduct may be involved."). In reply, USMS suggests that Plaintiff is actually only interested in "the names of government agents who may be able to provide information in support of Plaintiff's related litigation." USMS's Reply at 4. USMS argues that Plaintiff "fails

to establish that any potential reference to [cell phone tracking] technology in records pertaining to him (should they exist) is of interest to the general public." *Id.*

With respect to this proffered public interest, the Court agrees with USMS. As explained by the D.C. Circuit:

> [U]nless there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity, and access to names of private individuals appearing in the agency's law enforcement files is necessary in order to confirm or refute that evidence, there is no reason to believe that the incremental public interest in such information would ever be significant.

*SafeCard*, 926 F.2d at 1205–06. Plaintiff does not put forth compelling evidence of any illegal use of cell phone tracking technology in support of his FOIA request. He alleges that he "has a good-faith basis to believe" that USMS, or other authorities, used a cell-site simulator in the investigation that led to his arrest. Compl. ¶ 4. But this allegation, without more, does not amount to compelling evidence of illegal activity. *See Blackwell v. F.B.I.*, 646 F.3d 37, 41 (D.C. Cir. 2011) (concluding affidavit alleging government misconduct was insufficient to challenge invocation of Exemption 7(C)).

Moreover, Plaintiff's reliance on *ACLU* is misplaced. In that case, the FOIA requester sought case names and docket numbers for all criminal prosecutions that involved tracking of mobile location data where the government did not first secure a warrant for such data. 655 F.3d at 3–4. The court found "a significant public interest in disclosure" because "the disclosure of prosecutions in which the defendants were subject to warrantless cell phone tracking . . . would shed light on government conduct." *Id.* at 12. The breadth of the FOIA request, which sought "to show what [the tracking] policy is and how effective or intrusive it is," implicated a significant public interest separate and apart from allegations of government misconduct. *Id.* at 14. For this reason, the court found that the requested information, and derivative uses of the

information, shed light on a matter of substantive law enforcement policy. *See id.* at 14–15. Here, the requested information would not shed "light on the scope and effectiveness of cell phone tracking as a law enforcement tool." *Id.* at 13. Even derivative uses of the requested information—personally identifying information of individuals involved in Plaintiff's case— would not plausibly speak to substantive law enforcement policy in general, as the requested information in *ACLU* did. *See id.* at 14–15. Instead, the requested information might uncover evidence that could be useful in Plaintiff's other litigation, but that would not implicate a cognizable public interest in the Exemption 7(C) analysis. *Boyd*, 475 F.3d at 366. "[R]equests for such third party information are strongly disfavored." *Martin v. Dep't of Justice*, 488 F.3d 446, 457 (D.C. Cir. 2007). "This is particularly true when the requester asserts a public interest—*however it might be styled*—in obtaining information that relates to a criminal prosecution." *Blackwell*, 646 F.3d at 41 (emphasis added).

Plaintiff's second proffered public interest stems from his argument that his "status as a death row inmate, who is vigorously litigating claims of government misconduct underlying his conviction and sentencing, highlights the public interest in disclosure of law enforcement material that may itself shine light on the constitutional issues affecting [his] case." Pl.'s Opp'n at 11 n.3 (citing *Roth*, 642 F.3d at 1176–77). USMS does not specifically respond to this proffered public interest. USMS does, however, argue that under *Favish*, "the requester must at a minimum 'produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.'" USMS's Reply at 4 (quoting *Blackwell v. FBI*, 646 F.3d 37, 41 (D.C. Cir. 2011) (quoting *Favish*, 541 U.S. at 174)). Because "Plaintiff makes no specific factual allegations regarding any police misconduct" and "does not substantiate that

cell phone tracking technology was actually utilized by any law enforcement agency during his apprehension," *id.* at 5, USMS argues that the records are properly withheld, *id.* at 5–6.

This proffered public interest presents a more difficult analysis. As noted above, USMS is correct that Plaintiff has not substantiated his claims of police misconduct. But in *Roth*, the D.C. Circuit found that the FOIA requester's status as a death row inmate can affect the analysis under Exemption 7(C). 642 F.3d at 1176. The court stated that "[t]he fact that [the requester] has been sentenced to the ultimate punishment strengthens the public's interest in knowing whether the FBI's files contain information that could corroborate his claim of innocence." *Id.* The court distinguished this proffered public interest from an interest in obtaining material that "might bolster the *Brady* claims [the requester] is presenting in his collateral attacks on his conviction" and concluded that the "personal stake in the release of the requested information is 'irrelevant' to the balancing of public and third-party privacy interests required by Exemption 7(C)." *Id.* at 1177 (quoting *Mays v. DEA*, 234 F.3d 1324, 1327 (D.C. Cir. 2000)). The *Roth* court had the benefit of reviewing *in camera* the withheld information to determine whether it would substantiate the claims of innocence. *See id.* at 1178.

Here, Plaintiff has not articulated a claim of actual innocence. Instead, he argues that the public has an interest in information "that may itself shine a light on constitutional issues affecting [his] case." Pl.'s Opp'n at 11 n.3. Given the D.C. Circuit's conclusion in *Roth* that information that may bolster claims of a *Brady* violation does not implicate a cognizable public interest under Exemption 7(C), *Roth*, 642 F.3d at 1177, it is not clear that *Roth* offers any support to Plaintiff's case. Nevertheless, the Court appreciates the gravity of Plaintiff's status as a death row inmate. To confirm for itself that the withheld information does not implicate the public's interest in knowing whether the federal government engaged in unconstitutional conduct in

11

Plaintiff's case, the Court will review *in camera* the withheld material. *See id.* ("Although the public might well have a significant interest in knowing whether the federal government engaged in blatant *Brady* violations in a capital case, we are confident that none of the documents we have reviewed *in camera* reveals any such egregious government misconduct.").

### 3. Balancing

In light of the Court's discussion above, the Court concludes that, with respect to his first proffered public interest, Plaintiff has not presented sufficient evidence of government misconduct to overcome the substantial privacy interest in the redacted personally identifiable information. Absent evidence of agency misconduct, Plaintiff's proffered public interest in law enforcement's use of cell phone tracking technology in his case does not outweigh the private interests in nondisclosure. *See SafeCard*, 926 F.2d at 1206. The Court reserves judgment, however, with respect to Plaintiff's second proffered public interest in potential constitutional violations in his capital case. Upon review of the withheld information *in camera*, the Court will conduct the required balancing of this interest with the significant privacy interests at stake to determine whether USMS properly invoked Exemption 7(C).[7]

### B. Exemption 7(E)

FOIA Exemption 7(E) permits withholding of law enforcement records "to the extent the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for

---

[7] If the Court concludes that the balancing of interests requires disclosure under Exemption 7(C), the Court will separately consider whether the information is appropriately withheld under Exemption 7(F). Given that the Court concludes below that USMS must supplement its Exemption 7(E) justifications, the Court will analyze Exemptions 7(C) and 7(F), if necessary, after USMS files its renewed motion for summary judgment and *in camera* submission.

law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release . . . might create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)).  Notwithstanding the low bar set by Exemption 7(E), "the agency must at least provide *some* explanation of what procedures are involved and how they would be disclosed."  *CREW*, 746 F.3d at 1102 (emphasis in original); *see also Petrucelli v. Dep't of Justice*, 51 F. Supp. 3d 142, 171 (D.D.C. 2014) (finding a "near-verbatim recitation of the statutory standard" insufficient); *Dent v. Exec. Off. for U.S. Att'ys*, 926 F. Supp. 2d 257, 272 (D.D.C 2013) ("Notwithstanding the categorical protection to law enforcement techniques and procedures afforded under the first clause of Exemption 7(E) . . . no agency can rely on declarations written in vague terms or in a conclusory manner.").

Some of USMS's claims of Exemption 7(E) clear the "relatively low bar" set by the statute.  In its *Vaughn* Index, USMS explains that "[d]isclosure of internal identifying codes and numbers could assist unauthorized parties in deciphering the meaning of codes and numbers, aid in gaining improper access to law enforcement databases, and assist in the unauthorized party's navigation of the law enforcement databases." *Vaughn* Index at 5.  USMS further explains that "how law enforcement officers are identified in certain databases, as well as the specific databases utilized, are law enforcement techniques and procedures that are not commonly known." *Id.*  The Court understands that the redactions carrying these, or similar, justifications apply to information regarding the data management techniques and procedures used internally

13

by USMS.  *See Vaughn* Index at 5–7, 11–16.  The Court finds that these explanations sufficiently justify the invocation of Exemption 7(E) because they describe the techniques or procedures at issue and explain how disclosure might create a risk of circumvention of the law.  *See Blackwell*, 646 F.3d at 42 (finding invocation of Exemption 7(E) appropriate to protect the manner in which data is searched, organized, and reported to the FBI because it would enable criminals to employ countermeasures).

Other Exemption 7(E) justifications are too vague to justify withholding.  For example, the *Vaughn* Index includes the following justification for various portions of the production: "Information regarding how law enforcement officers investigate targets of a criminal operation and the dates those actions start discloses case development strategy, as well as law enforcement procedures not known to the public."  *Vaughn* Index at 6; *see also id.* at 8 ("Law enforcement officer opinion regarding alleged crimes committed . . . is indicative of case development procedures and investigative strategy."); *id.* at 9 ("Information regarding how law enforcement investigates targets of a criminal operation . . . discloses law enforcement techniques and procedures.").  With respect to pages 66–137 of the production, which were withheld in full, USMS vaguely states that "redacted from pages 72–127 is documentation showing engagement in law enforcement techniques and procedures, to include non-public investigative methods utilized to investigate a fugitive."  *Id.* at 13.  These explanations leave the Court guessing as to what techniques or procedures the agency wishes to protect from disclosure and how disclosure could reveal them.  *See CREW*, 746 F.3d at 1102 ("We are not told what procedures are at stake . . . Nor are we told how disclosure . . . could reveal such procedures. (Are the procedures spelled out in the documents?  Or would the reader be able to extrapolate what the procedures are from the information contained therein?)").  Similarly vague justifications have not held up in prior

14

cases. *See id.* (finding Exemption 7(E) not properly claimed "to protect procedures and techniques used by FBI [agents] during the investigation."); *Petrucelli*, 51 F. Supp. 3d at 171 (same); *Dent*, 926 F. Supp. 2d at 272–73 (finding the agency must "provide evidence from which the Court can deduce something of the nature of the techniques in question" (quoting *Clemente v. FBI*, 741 F. Supp. 2d 64, 88 (D.D.C. 2010)). Therefore, the Court concludes that USMS must do more to justify its withholdings under Exemption 7(E) that do not relate to internal identifying codes and databases.[8]

Further complicating matters is the fact that the Court cannot determine which redactions correctly invoke Exemption 7(E) and which redactions require more explanation. For certain pages or sets of pages, USMS's *Vaughn* Index provides both an appropriate and an inappropriate justification for the claim. *See Vaughn* Index at 5–6 (withholding "internal identifying codes" and "case development strategies" on page 23); *see also id.* at 6–7 (justification for page 38); *id.* at 11–12 (justification for pages 41–52); *id.* at 12–14 (justification for pages 66–137); *id.* at 15–16 (justification for pages 272–89). For this reason, the Court cannot yet decide whether USMS has released all segregable non-exempt information. Although the Court has concluded that some of USMS's Exemption 7(E) justifications are appropriate, it cannot yet grant partial summary judgment in its favor given these circumstances. The Court will await further justification from USMS on its Exemption 7(E) claims before ruling on segregability.

* * *

---

[8] Because USMS has not adequately described the techniques and procedures at issue to justify withholding, the Court need not decide at this time whether the statute allows for categorical withholding of law enforcement techniques and procedures without a need to consider whether disclosure would lead to circumvention of the law. *See CREW*, 746 F.3d at 1102 n.8 (noting "disagreement whether the 'risk of circumvention' requirement applies to records containing 'techniques and procedures' or only to records containing 'guidelines'"); *see also* Pl.'s Opp'n at 14.

In summary, the Court will review an unredacted version of all 300 pages of USMS's production *in camera* to determine whether the public's interest in disclosure of potential constitutional violations in a capital case are implicated in the information withheld pursuant to Exemption 7(C). With respect to Exemption 7(E), USMS must provide further justification for its withholdings by explaining in sufficient detail the techniques and procedures at issue and how disclosure would reveal them. USMS should also clarify, where applicable, the redactions to which its various Exemption 7(E) justifications apply. Given that USMS will have an opportunity to supplement the justifications for its claimed exemptions, Plaintiff's cross motion for summary judgment is premature.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 27) and Plaintiff's Cross Motion for Summary Judgment (ECF No. 32) are **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  April 20, 2021                                                                 RUDOLPH CONTRERAS
                                                                                                      United States District Judge