## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| MARIO DION WOODWARD, | : | | |
| | : | | |
| *Plaintiff*, | : | Civil Action No.: | 18-1249 (RC) |
| | : | | |
| v. | : | Re Document No.: | 40, 43 |
| | : | | |
| U.S. MARSHALS SERVICE, | : | | |
| | : | | |
| *Defendant*. | : | | |

### <u>MEMORANDUM OPINION</u>

<span style="font-variant:small-caps">Granting in Part and Denying in Part Defendant's Renewed Motion for Summary Judgment; Granting in Part and Denying in Part Plaintiff's Renewed Motion for Summary Judgment</span>

### I. INTRODUCTION

Plaintiff Mario Dion Woodward filed the FOIA request at issue in this case seeking records pertaining to the use of any cell phone tracking technology during the criminal investigation that ultimately led to his conviction of capital murder and death sentence.  He believes that investigating authorities, including members of the United States Marshals Service ("USMS"), may have used cellphone tracking technology without a warrant in furtherance of that investigation.

This Court previously considered and rejected both parties' cross-motions for summary judgment, finding that *in camera* review of the responsive documents and further explanation of the agency's withholdings was required.  *Woodward v. U.S. Marshals Serv.*, 534 F. Supp. 3d 121, slip op. at 16 (D.D.C. 2021) [hereinafter "Mem. Op."].  The USMS has now submitted the unredacted documents for *in camera* review, *see* Notice of *In Camera* Submission, ECF No. 39, and has renewed its Motion for Summary Judgment, *see* Def.'s Renewed Mot. Summ. J. ("Def.'s Mot."), ECF No. 40.  Mr. Woodward has opposed that motion, *see* Mem. L. Opp'n to Def.'s

Renewed Mot. Summ. J. ("Pl.'s Opp'n"), ECF No. 42, and has filed his own Renewed Cross-Motion for Summary Judgment, *see* Pl.'s Renewed Cross-Mot. Summ. J. Pursuant to Fed. R. Civ. P. 56 ("Pl.'s Cross-Mot."), ECF No. 43, which the USMS has opposed, *see* Reply in Supp. Def.'s Renewed Mot. Summ. J. & Opp'n Pl.'s Cross-Mot. Summ. J. ("Def.'s Reply & Opp'n"), ECF No. 45.  The Court will grant in part and deny in part both motions.

## II.  FACTUAL BACKGROUND[1]

Plaintiff Mario Dion Woodward is currently on death row for the murder of Officer Keith Houts of the Montgomery Police Department in 2006.  Def.'s Mot. at 2; Pl.'s Cross-Mot. at 6. Mr. Woodward, who was identified as a suspect in the shooting, was located and arrested by the USMS the next day in Atlanta, Georgia.  *Id.*  He was indicted, tried, and convicted by a jury in August 2008 in Alabama.  *Id.*  "At sentencing, the judge overrode the jury's recommendation of a sentence of life without the possibility of parole and, instead, imposed a death sentence." Mem. Op. at 7.  Mr. Woodward believes that the investigation which preceded his arrest may have involved the use of a cell-site simulator, more colloquially known by the trade name 'stingray,' and that this technology was used without a warrant. Ex. 1 to Pl.'s Opp'n ¶ 7.  Mr. Woodward therefore made a FOIA request to the USMS in December 2015 seeking:

---

[1] The material facts of this case are not in dispute.  *See* Ex. 2 to Pl.'s Opp'n at 1 ("Plaintiff does not dispute the facts as stated in the USMS' Statement of Material Facts . . . . Plaintiff respectfully submits that no material facts remain in dispute.").  The USMS disputes only the "materiality" and "characterization" of Plaintiff's description of the USMS's initial response to the request, but any such dispute has no bearing on the legal issues before the Court. Ex. 1 to Def.'s Reply & Opp'n ¶ 3.  The USMS also declined to admit that "In light of the USMS' denial of his FOIA request, Plaintiff filed this action . . . seeking declaratory and injunctive relief requiring the production of all documents responsive to his request."  *Id.* ¶ 4.  The record in this case leaves no doubt that Woodward did indeed request such relief, Compl. at 17–18, and any disagreement the USMS may have about his entitlement to that relief or reasons for requesting it do not create a disputed issue of material fact for the purposes of resolving the present cross motions before the Court.

> All records in any way relating to, pertaining to or mentioning the use of any cell phone tracking technology during the investigation of the shooting death of Officer Keith Houts on September 28, 2006, by state and/or federal law enforcement located in the State of Alabama and/or the State of Georgia, including but not limited to the use of any GPS or "stingray" technology by the Alabama Bureau of Investigations or the U.S. Marshalls [sic] located in Alabama and Georgia.

Ex. 1 to Def.'s Reply & Opp'n ¶ 1.

The present FOIA action was filed on May 29, 2018. *Id.* ¶ 4. Following the filing of the Complaint, the USMS produced 300 pages of responsive records subject to withholdings under FOIA Exemptions 6, 7(C), 7(E), and 7(F). *Id.* ¶ 6. The parties agree that only three disputed issues require the Court's resolution:

- The USMS's withholding of names and contact information for law enforcement officers under FOIA Exemptions 6, 7(C), and 7(F);

- The USMS's withholding of references to cell phone tracking technology, including but not limited to specialists in such technology, to the extent they exist, under FOIA exemptions 6, 7(C), 7(E), and 7(F); and

- The USMS's full withholding of pages 23, 38, 40, 41–53, and 72–137 of its June 14, 2019 production under the same exemptions.

*Id.* ¶ 7; Joint Status Rep. at 2, ECF No. 26.

### III.  LEGAL STANDARD

The Freedom of Information Act is meant "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). The FOIA statute "directs that 'each agency, upon any request for records . . . shall make the records promptly available to any person' unless the requested records fall within one of the statute's nine exemptions." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting 5 U.S.C. § 552(a)(3)(a)). Review of an agency's FOIA determination is *de novo*. 5 U.S.C. § 552(a)(4)(B).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)).  Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

To prevail on a motion for summary judgment in a FOIA case, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements."  *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (internal quotation marks omitted) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)).  "The agency bears the burden of establishing that a claimed exemption applies," *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.* ("*CREW*"), 746 F.3d 1082, 1088 (D.C. Cir. 2014), and exemptions are "given a narrow compass," *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 151 (1989).  A court "may award summary judgment solely on the basis of information provided by the department or agency in declarations" if "the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Ethics &*

*Responsibility in Wash. v. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Mil.*

*Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981))).

## IV.  ANALYSIS

Exemption 7 of FOIA allows an agency to withhold "records or information compiled for

law enforcement purposes," but only within the context of certain enumerated subsections.  5

U.S.C. § 552(b)(7).  It is undisputed here that the records at issue—related to "the investigation

of the shooting death of Officer Keith Houts . . . by state and/or federal law enforcement," *see*

Ex. 1 of Def.'s Reply & Opp'n ¶ 1—were compiled for a law enforcement purpose, thus

bringing them within the scope of Exemption 7.  *See Pinson v. Dep't of Just.*, 236 F. Supp. 3d

338, 364 (D.D.C. 2017) ("In order to withhold documents under Exemption 7, the agency must,

as a preliminary matter make a threshold showing demonstrating that the records were compiled

for a law enforcement purpose." (cleaned up)).  Each subcategory of Exemption 7 exempts

different types of documents and has a separate legal standard for its application.

The USMS has asserted subcategories 7(C), 7(E), and 7(F) to withhold responsive

documents in full or in part.  Mr. Woodward does not object to every full or partial withholding.

*See* Ex. 1 of Pl.'s Opp'n ¶ 18; Joint Status Rep. at 2, ECF No. 26.  Luckstone Supp. Dec. ¶ 5.  In

its prior opinion, this Court noted that the USMS's "application of these three exemptions is

generally coextensive."  Mem. Op. at 5.  Upon review of the now supplemented record, however,

it is clear to the Court that not all of the full or partial withholdings invoke the same subsections,

particularly with respect to the partial withholdings.  The Court will therefore evaluate the partial

redactions first, before turning to the pages that were withheld in full.

## A.  Exemption 7(C)

Exemption 7(C)[2] protects "records or information compiled for law enforcement purposes," and which, if disclosed, "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  The Court must first examine the private interest at stake and the proffered public interest in disclosure, and then balance those competing interests to determine if the information is properly withheld.  *See CREW*, 746 F.3d at 1091–96.  On the private interest side of the ledger, 7(C)'s protective standard derives from the fact that "the very mention of an individual's name" in law enforcement records could "engender comment and speculation and carries a stigmatizing connotation."  *Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1174 (D.C. Cir. 2011) (quoting *Schrecker v. U.S. Dep't of Just.*, 349 F.3d 657, 666 (D.C. Cir. 2003)).  That interest can be impacted by the circumstances of the subject whose privacy is implicated, however.  *See, e.g.*, *CREW*, 746 F.3d at 1092 ("DeLay's obvious privacy interest in keeping secret the fact that he was the subject of an FBI investigation was diminished by his well-publicized announcement of that very fact.").  In contrast, "the public interest side of the balance is not a function of the identity of the requester."  *Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.*, 185 F.3d 898, 904 (D.C. Cir. 1999) (cleaned up); *see also Multi Ag.*

---

[2] The USMS has also asserted Exemption 6 over the same materials, which allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6). Exemptions 6 and 7(C) both require a balancing of public and private interests, *Beck v. U.S. Dep't of Just.*, 997 F.2d 1489, 1491 (D.C. Cir. 1993), but "Exemption 7(C) is more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material."  *Prison Legal News v. Samuels*, 787 F.3d 1142, 1146 n.5 (D.C. Cir. 2015) (cleaned up); *see also U.S. Dep't of Def. v. Fed. Lab. Relations Auth.*, 510 U.S. 487, 496 n.6 (1994) ("Exemptions 7(C) and 6 differ in the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions.").  Accordingly, the Court will address the USMS's asserted withholdings under Exemption 7(C) only.  *See Fischer v. U.S. Dep't of Just.*, 596 F. Supp. 2d 34, 47 n.17 (D.D.C. 2009).

*Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1231 n.2 (D.C. Cir. 2008) ("[T]he use for which the requestor seeks the information is not relevant for purposes of determining the public interest under FOIA Exemption 6."). Rather, the public interest turns on "the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 772 (1989) (cleaned up).

The USMS invoked Exemption 7(C) to justify its redactions of names and other personal identifying information throughout its submission, including of law enforcement officials.[3] This Court has already held, and continues to hold, that "that disclosure of the personally identifying information in USMS's files implicates strong privacy interests." Mem. Op. at 8. The official duties of those individuals, the already-public nature of the involvement of some, and the passage of time may marginally lessen those personal privacy interests, but any such reduction is minimal. *See Schrecker*, 349 F.3d at 666 ("The passage of time, without more, does not materially diminish these interests."); *Lesar v. U.S. Dep't of Just.*, 636 F.2d 472, 487 (D.C. Cir. 1980) ("In their capacity as public officials FBI agents may not have as great a claim to privacy as that afforded ordinarily to private citizens, but the agent by virtue of his official status does not forgo altogether any privacy claim . . . ."); *100Reporters LLC v. U.S. Dep't of Just.*, 248 F. Supp. 3d 115, 164 (D.D.C. 2017) ("Courts have acknowledged that . . . the risk[s] of harassment,

---

[3] Woodward does not appear to object to the withholding of the identifying information of individuals such as informants and witnesses. *See* Ex. 2 of Pl.'s Renewed Cross-Mot. ¶ 7("[T]the parties have narrowed the remaining areas of dispute in this case to . . . withholding of names and contact information for law enforcement officers under FOIA Exemption[] . . . 7(C) . . . ."). Regardless, the Court finds that the privacy interest of informants, witnesses, and other third parties who were investigated is strong, and that information was properly withheld for the same reasons described here.

embarrassment, and reputational damage . . . are not applicable in the context of *every* government employee." (cleaned up) (emphasis in original)).

When Exemption 7(C) is invoked, a FOIA requester must both "show that the public interest sought to be advanced is a significant one" and that "the information is likely to advance that interest." *Boyd v. Crim. Div. of U.S. Dep't of Justice*, 475 F.3d 381, 387 (D.C. Cir. 2007) (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)).  The Court acknowledged in its prior opinion that the public may have an interest in "knowing whether the federal government engaged in unconstitutional conduct in Plaintiff's case."  Mem. Op. at 11–12.  This interest is underscored by Mr. Woodward's status as a death row inmate, because "[t]he fact that [an individual] has been sentenced to the ultimate punishment strengthens the public's interest in knowing whether the [agency's] files contain information that could corroborate his claim of innocence."[4]  *Roth*, 642 F.3d at 1176.  The requestor in *Roth* asserted two public interests: knowledge of whether the government had complied with its *Brady* obligations in that requestor's case, and the more general interest of "knowing whether the FBI is withholding information that could corroborate a death-row inmate's claim of innocence."  *Id.* at 1175.  Although the Circuit noted that the second interest was "broader" than the first and "substantial," it did not create a categorical rule for when either would require disclosure.  *Id.* at 1177–78.  To the contrary, it considered both in its balancing analysis.  *Id.* at 1176–79.  The Court therefore recognizes that there can be a significant public interest in information that would shed light on the constitutionality of the conviction of a death-row defendant.

---

[4] Mr. Woodward also points out that, while not material to this particular FOIA request, he has in fact continuously asserted and litigated his actual innocence of the murder.  Pl.'s Opp'n & Cross-Mot. at 7, n.1.

However, disclosure of the withheld documents must somehow further the asserted public interest. *Favish*, 541 U.S. at 172. With the benefit of *in camera* review, the Court is able to determine that the disclosure of the names and personal identifying information of the law enforcement officers in this case would not further the public in understanding "what their government is up to," *see Reps. Comm. for Freedom of Press*, 489 U.S. at 773, with respect to this conviction or any other. Because disclosure of law enforcement official's names would not actually further the asserted public interest, it does not outweigh the privacy interests at stake. Accordingly, the Court will grant summary judgment to the USMS with respect to the redaction of the names and personal identifying information of law enforcement officers.[5]

## B. Exemption 7(E)

Woodward objects to the USMS's invocation of Exemption 7(E) to withhold "references to cell phone tracking technology. . . to the extent they exist." Ex. 1 to Def.'s Reply & Opp'n ¶ 7; July 10, 2020 Joint Status Rep. at 2. Exemption 7(E) permits withholding of law enforcement records "to the extent the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Notably absent from this standard is the balancing of interests that was required

---

[5] Woodward also challenges any withholdings under 7(C), to the extent that they occurred, "of references to cell phone tracking technology . . . and the involvement of specialists in such technology." Ex. 1 of Pl.'s Opp'n ¶ 18b. It appears that to the extent the partially redacted information can be construed as relating to cell phone tracking technology, the USMS has asserted Exemption 7(E) over that information rather than 7(C). And because the Court has already determined that the USMS met its burden of withholding the names and contact information for law enforcement officers under Exemption 7(C), it need not consider the application of Exemption 7(F) to those withholdings.

for 7(C). "Exemption 7(E) sets a relatively low bar for the agency to justify withholding . . . [it] only requires that the [agency] demonstrate logically how the release . . . might create a risk of circumvention of the law." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)).

Notwithstanding that low bar, "the agency must at least provide *some* explanation of what procedures are involved and how they would be disclosed." *CREW*, 746 F.3d at 1102 (emphasis in original). Exemption 7(E) does not exempt "routine techniques and procedures already well known to the public." *Founding Church of Scientology of Washington, D. C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 832 n.67 (D.C. Cir. 1979); *see also Davin v. U.S. Dep't of Just.*, 60 F.3d 1043, 1064 (3d Cir. 1995) (noting the same legislative intent to exclude "ballistics tests, fingerprinting, and other scientific tests or commonly known techniques" (quoting H.R. Rep. No. 1200 (1974) (Conf. Rep.), *as reprinted in* 1974 U.S.C.C.A.N. 6285, 6291))). But it may protect the "confidential details of programs if only their general contours are publicly known." *Elec. Frontier Found. v. Dep't of Just.*, 384 F. Supp. 3d 1, 10 (D.D.C. 2019) (cleaned up).

Beginning first with the partial redactions, the USMS asserted Exemption 7(E) to redact case identifying numbers and other internal identifying codes, which the Court already found to surpass the low bar of Exemption 7(E) in its prior opinion. Mem. Op. at 13. The Court remains satisfied following *in camera* review that the USMS has done so appropriately and grants the agency summary judgment with respect to case identifying numbers and internal codes.

In another partial withholding, found on pages 17, 28, 30, 32, 34, 63, 154, 155, 264, and 298, the USMS also labeled a single redaction as based on Exemption 7(D), which protects from disclosure information that "could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D). The USMS has not so much as mentioned

Exemption 7(D), much less attempted to justify this withholding under it.  In at least one duplicate of one of those pages, though, the same redaction is instead labeled as a 7(E) withholding.  *See* June 14, 2019 Production ("Production"), Page 10.

The Court has determined from its *in camera* review that neither Exemptions 7(D) nor 7(E) support the redaction of this single phrase.  Release would not disclose the identity of a confidential source because the document does not identify one by name or even relationship; rather, it only indicates that such a source existed.  Nor would release "disclose techniques and procedures for law enforcement investigations" in a way that "could reasonably be expected to risk circumvention of the law."  *See* 5 U.S.C. § 552(b)(7)(E).  Again, the redacted phrase merely indicates that one or more informants existed.  Such information hardly creates a risk of future circumvention of the law and was in fact mentioned in the Complaint and discussed in other released portions of the same production.  *See* Compl. ¶ 17 ("[T]he USMS had been notified via anonymous tip that Mr. Woodward had been dropped off in Atlanta."); Production, Page 151 (including the unredacted statement that "detectives conducted extensive interviews with a number of informants that know Woodward").  The Court will therefore order disclosure of that single phrase marked with Exemption 7(D) on pages 17, 28, 30, 32, 34, 63, 154, 155, 264, 298, and the identical phrase labeled with Exemption 7(E) on page 10.

A more difficult question is the portion of pages 3–4, and duplicates thereof, which redacts a section of the document labeled "telephonic data available for this fugitive," followed by a list of phone numbers.  The USMS does not mention this specific redaction in either its declaration or *Vaughn* Index.  But there is not a strict method or form required for an agency to meet its withholding burden under FOIA as long as the Court is able to adequately conduct a *de novo* review.  *Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006)

(observing that an agency may satisfy its burden through a combination of declarations, *in camera* review, or indexes so long as the "measure will adequately aid a court" in evaluating the exemption).  Some of the more general statements in the Declaration seem to extend to this information.  *See* Luckstone Supp. Dec. ¶ 13 ("[T]his information could divulge who law enforcement investigated in connection to the Plaintiff for apprehension purposes."); *id.* ¶ 17 ("If a fugitive knows specific details regarding how the USMS investigates fugitives, that fugitive could modify his or her actions to evade law enforcement apprehension efforts.").  Most importantly here, the Court has the benefit of evaluating the unredacted information *in camera*.

The Court finds that the USMS properly withheld some—but not all—of this particular section of pages 3–4.  The list of specific phone numbers could provide insight on law enforcement investigation techniques that satisfy the standard of Exemption 7(E) and was therefore properly redacted.  But the mere fact that telephonic data was collected does not merit redaction.  Perhaps in 2006 such a technique might not have been "well known to the public," *Founding Church of Scientology*, 610 F.2d at 832 n.67, but in 2022 it is safe to say that the potential for phones to double as tracking devices is common knowledge, *see Carpenter v. United States*, 138 S. Ct. 2206, 2218 (2018) ("Only the few without cell phones could escape this tireless and absolute surveillance."); Pl.'s Opp'n & Cross-Mot. at 28 (collecting examples of public reporting of cell-phone tracking technology).  Because the "general contours" of cell data tracking is "publicly known," the USMS cannot redact the section of the document indicating its existence, but it may redact the "confidential details" of what was tracked, specifically, the numbers that were investigated.  *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1112 (D.C. Cir. 2007).

Although this was a redacted section within a partially released document, the USMS was overly zealous with how much was redacted, even though a non-exempt portion of that section (the label) was reasonably segregable.  *See* 5 U.S.C.A. § 552(b) ("*Any* reasonably segregable portion of a record shall be provided . . . after deletion of the *portions* which are exempt . . . ." (emphasis added)).  Given that this document has already been released in part, the Court does not believe the difficulty in releasing this additional line would create an unreasonable burden, nor does its relatively brief nature render it "meaningless" in the context of the document; much to the contrary, it is highly relevant to the request.  *See Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977) (noting that information might not be "reasonably segregable" where "the cost of line-by-line analysis would be high and the result would be an essentially meaningless set of words and phrases").

By redacting even the label on this section of the document, the USMS has effectively attempted to accomplish through redaction what an agency would normally do through a *Glomar* response—refusing to admit or deny the existence of responsive records.  "An agency may issue a *Glomar* response when to answer the FOIA inquiry would cause harm cognizable under an applicable statutory exemption," but in that situation it is the agency's burden to "demonstrate that acknowledging the mere existence of responsive records would disclose exempt information."  *Elec. Privacy Info. Ctr. v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012) (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)).  That burden has not been met here.  *Cf. Reps. Comm. for Freedom of Press v. FBI*, 369 F. Supp. 3d 212, 221 (D.D.C. 2019) (an agency's *Glomar* response declining to acknowledge the existence of records relating to a publicly known investigation technique was not justified under Exemption 7(E)).  Summary judgment will

therefore be granted in part to Mr. Woodward on the non-exempt portions of pages 3–4, more specifically, the label of that subsection.

For the same reasons, the USMS improperly redacted the name of a specific sub-unit that assisted with the investigation on pages 10, 17, 28, 30, 32, 34, 63, 154, 155, 264, and 298 under Exemption 7(E).[6]  The mere mention of this unit does not disclose any "confidential details" of its operation, *see Elec. Frontier Found.*, 384 F. Supp. 3d at 10, and the existence and general functions of the different components of the USMS are public knowledge, *see, e.g.*, Dep't of Justice, *Organization, Mission, and Functions Manual: U.S. Marshals Service*, https://www.justice.gov/jmd/organization-mission-and-functions-manual-united-states-marshals-service.  The USMS fails to meet its burden in showing how the disclosure of this single reference to one unit in a discrete investigation fifteen years ago "could reasonably be expected to risk circumvention of the law."  *See* 5 U.S.C. § 552(b)(7)(E).  Accordingly, summary judgment will be granted for Mr. Woodward with respect to the name of the USMS sub-unit on pages 10, 17, 28, 30, 32, 34, 63, 154, 155, 264, and 298.

### C.  Documents withheld in full

Finally, Mr. Woodward objects to "[t]he USMS' withholding of the entirety of pages 23, 38, 40, 41-53, and 72-137 of its production."  Ex. 1 of Pl.'s Opp'n ¶ 18c.  The Court will discuss each in turn.

---

[6] On three of these pages, the redaction for this phrase is merely labeled "(b)(7)." Production, Pages 154, 264, 298.  Because those pages are duplicates and the other pages labeled the redaction as Exemption 7(E), the Court assumes that the USMS intended to assert Exemption 7(E) over this phrase on all pages.

*a.  Page 23*

This document is a one-page printout from a non-public USMS database.  *See* Ex. A of Def.'s Mot. ("2d *Vaughn* Index") at 3, ECF No. 40-4.  It consists of four columns, which identify "the specific law enforcement personnel from a specialized group tasked with investigating the Plaintiff," "an internal identifying number that identifies the law enforcement officer in the USMS database," "the start date of investigations pertaining to third party individuals," "internal codes, specific to a USMS database, which are acronyms representing identifiable investigatory actions taken by law enforcement personnel," and "information pertaining to third parties who were investigated in connection with the Plaintiff for apprehension purposes." *Id.*  The USMS justified this withholding under Exemption 7(E), stating that "[h]ow law enforcement officers are identified in certain databases, which law enforcement officers are assigned to certain investigations, and the specific database utilized to document an investigation, consist of, and reveal, law enforcement techniques and procedures that are not commonly known" and that "[w]ere the third-parties' association with the Plaintiff released, it could show what types of associates law enforcement would investigate in future fugitive cases, revealing law enforcement's collection of information or evidence and operational strategies." *Id.* at 3–4.

This explanation, in combination with the Court's *in camera* review, is sufficient to meet the agency's burden of withholding this page under Exemption 7(E).[7]  This page contains "confidential details" rather than "general contours" of the investigative procedures used that are not public knowledge, and the agency has given a sufficient explanation for how that information could jeopardize future investigations.  *See Sussman*, 494 F.3d at 1112.  Moreover, the Court is

---

[7] Because the Court determines that the USMS properly withheld this document in full under 7(E), it need not consider any other potential exemptions.

satisfied that the "non-exempt portions" of this document are "inextricably intertwined with exempt portions" such that segregability is not required.  *See Mead Data Cent.*, 566 F.2d at 260. Summary judgment is therefore granted to the USMS with respect to page 23.

### b.  Pages 38 and 40

Pages 38 and 40 are both "one-page fax cover sheet[s]" requesting information from "an organization external to the USMS."  2d *Vaughn* Index at 5–6.  These two pages, and duplicates thereof, were withheld in full under Exemptions 7(C) and 7(E), and page 38 was also withheld in full under Exemption 7(F).  Although some of the information on these two pages was properly withheld under Exemption 7(C), the Court determines from its *in camera* review that most of the document was reasonably segregable and must be released.

As the *Vaughn* Index notes, both pages "identif[y] the specific investigator engaged in the investigation."  *Id.*  The name and contact information of the investigating officer, as well as third party phone numbers, may be properly redacted under Exemption 7(C) from those documents for the reasons described above.  However, the USMS also withheld the name of the external organization that sent or received those faxes, specifically, a phone company.  *See* Production, Pages 38, 40.  "[T[he concept of personal privacy under Exemption 7(C) is not some limited or 'cramped notion' of that idea."  *Favish*, 541 U.S. at 165.  But the privacy interest must still be "personal."  5 U.S.C. § 552(b)(7)(C).  The Supreme Court has held in no uncertain terms that "[t]he protection in FOIA against disclosure of law enforcement information on the ground that it would constitute an unwarranted invasion of personal privacy does not extend to corporations."  *FCC v. AT&T Inc.*, 562 U.S. 397, 409–10 (2011).  Accordingly, there is no "personal privacy" right at stake for the name of corporate entity that was redacted or the message.  Exemption 7(C) simply has no relevance here.

Of course, redaction under 7(E) might have been appropriate even if redaction under 7(C) was not.  The USMS has expanded on its original 7(E) justification for this withholding, now saying that:

> USMS sought records and information from this entity in connection with the Agency's effort to apprehend Plaintiff.  A law enforcement officer evaluated an operational mission and made an assessment regarding which external entity(ies) should be contacted in connection with achieving an operational goal. Additionally, the officer determined when during the operational mission that contact would be beneficial to the investigation's objective . . . . On their face, records pertaining to the external entities USMS contacts in furtherance of operational efforts identify law enforcement techniques and procedures that are not commonly known.  Disclosure of specific law enforcement techniques and procedures could enable people seeking to violate or circumvent the law to take proactive steps to counter operational and investigative actions taken by USMS during enforcement operations.  If a fugitive knows specific details regarding how the USMS investigates fugitives, what information it finds beneficial to that effort, and from which external entities it derives records and assistance, that fugitive could modify his or her actions to evade law enforcement apprehension efforts. Such action would place law enforcement officers, as well as the public, in increased danger.

2d *Vaughn* Index at 5–6.[8]

The Court is hard-pressed to see how releasing this document risks circumvention of the law.  *See Prop. of the People, Inc. v. Dep't of Just.*, 539 F. Supp. 3d 16, 28 (D.D.C. 2021) (ordering disclosure of surveillance logs after an *in camera* review that "[found] nothing that bad actors could make use of").  The company at issue is a phone company.  Page 40 requests data for a specific phone number from that company, and page 38 confirms the company's response. Production, Pages 38, 40.  The USMS's assertion that disclosing the name or even the broad generalities of the request would educate potential fugitives on avoiding apprehension strains credibility.  As discussed above, collection of cell phone data from third-party companies is

---

[8] Although the *Vaughn* Index does not specifically mention it, page 38 does include an internal file number that would also be appropriately redacted under 7(E), as described above.

already a known law enforcement tactic, whose procedures are in fact detailed by statute. *See Carpenter*, 138 S. Ct. at 2212 (discussing the Stored Communications Act). Disclosing the mere use of that tactic in a single case over a decade ago would not "reduce or nullify the technique's effectiveness," or "change [the] calculus . . . in [a] criminal's decision as to what to do." *Reps. Comm. for Freedom of Press v. FBI*, 369 F. Supp. 3d at 225. The USMS's conclusory assertions do not convince the Court otherwise.

Finally, Exemption 7(F) protects from disclosure information contained in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). That "broad" language "does not require that a particular kind of individual be at risk of harm; 'any individual' will do." *Public Emps. for Env't Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 205 (D.C. Cir. 2014). The agency need not establish a definite risk, rather, "a reasonable expectation of endangerment suffices." *Id.* The USMS only invoked Exemption 7(F) for page 38, which confirmed that the phone company had provided the requested documents.[9]

The USMS's justification for withholding the information under 7(F) is predicated on its invocation of 7(E): "If a fugitive knows specific details regarding how the USMS investigates fugitives . . . that fugitive could modify his or her actions to evade law enforcement apprehension efforts" thereby "plac[ing] law enforcement officers, as well as the public, in increased danger." Ex. 4 of Def.'s Mot. at 5–6. The Court has already determined that the USMS failed to meet its burden of showing how disclosure of the company name and message would reveal such

---

[9] Because the Court has already determined that USMS may permissibly redact the name and contact information of the investigating officer under 7(C), it need not determine whether 7(F) would have also protected that information.

"specific details" that risk circumvention of the law.  The next step of its argument therefore necessarily fails as well.

Having determined that the USMS has not met its burden of withholding the company name and message under Exemptions 7(C), 7(E), or 7(F), the Court will grant Mr. Woodward's motion in part with respect to pages 38 and 40.  However, the USMS may redact the names and contact information for the law enforcement officers, case identifying numbers, and third party telephone numbers within those documents.

### c.  Page 41

"[P]age 41 is a printout obtained from an entity external to the USMS pertaining to a third party individual," which "contains that individual's name, address, driver's license number, and email address" and "is labeled 'proprietary and confidential.'"  2d *Vaughn* Index at 10.  The USMS asserts that disclosure of this document would "signal[] the types of information law enforcement gathers and exploits to apprehend fugitives" that "are not commonly known."  *Id.* The Court agrees that USMS has cleared the "low bar" set by Exemption 7(E) with respect to this page.  *Blackwell*, 646 F.3d at 42.  Moreover, because the information as a whole could collectively reveal law enforcement investigation techniques even with the otherwise personal information redacted, the Court is satisfied from its own review that this document does not contain any reasonably segregable portions.  Summary judgment is therefore granted to the USMS with respect to page 41.

### d.  Pages 42–43

Pages 42–43 contain "handwritten, law enforcement officer notes pertaining to multiple third-party individuals."  1st *Vaughn* Index at 11.  The USMS asserted Exemptions 6, 7(C), 7(F), and 7(E) over these pages in its prior motion.  Although the supplemental *Vaughn* Index omits

mention of these specific pages, the Court finds based on a combination of the original justification and its *in camera* review that withholding of these two pages was justified under Exemption 7(C).

Both pages contain names, phone numbers, addresses, and emails, which implicate a strong personal privacy interest. *See Roth*, 642 F.3d at 1174 (recognizing that "the very mention of an individual's name" in law enforcement records may "engender comment and speculation and carries a stigmatizing connotation"). Moreover, although there may be some public interest in the integrity of an investigation such as this one, which resulted in Mr. Woodward's death sentence, the specific information found on these two pages would not likely "advance that interest." *Favish*, 541 U.S. at 172. In *Roth*, the Circuit recognized that "the public might well have a significant interest in knowing whether the federal government engaged in [unconstitutional conduct] in a capital case," but that interest did not override the privacy interests at stake where an *in camera* review eliminated any concern of "government misconduct." *Roth*, 642 F.3d at 1177. The same is true here, as the Court is satisfied from its own review of the documents that these two pages contain only lawfully collected investigative notes. Moreover, because both pages are almost entirely made up of this personal information, any potential segregation would "produce an edited document with little informational value" and is not required. *Mays v. Drug Enf't Admin.*, 234 F.3d 1324, 1327 (D.C. Cir. 2000) (quoting *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981)).[10] Accordingly, the Court grants summary judgment to the USMS with respect to pages 42–43.

---

[10] Because the entirety of these two pages was properly withheld under Exemption 7(C), the Court need not address the other asserted exemptions.

*e.  Pages 44-53*

These pages are printouts from non-public law enforcement databases, some state-owned and some that are maintained by the USMS.  2d *Vaughn* Index at 12–13.[11]  Each page contains information relating to individuals other than Mr. Woodward.  *Id.*  All the printouts contain personal identifying information that implicates strong privacy interests, including names, mug shots, social security numbers, criminal history, addresses, and vehicle information.  The disclosure of that information would not further a public benefit under FOIA for the same reasons discussed above.  Accordingly, the USMS has satisfied its burden of withholding that information under 7(C).

Segregability presents a trickier question for this set of documents, however, since much of the exempt personal identifying information could be redacted.  Mr. Woodward correctly points out that "the agency bears the burden of showing either that all information within the document is exempt, or that its non-exempt content cannot be disentangled from exempt material."  Pl.'s Opp'n at 22; *see also Wilderness Soc. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 19 (D.D.C. 2004) ("As always, it is incumbent on the *agency* to prove that no segregable information exists." (emphasis in original)).  The USMS's only attempt to meet this burden is a blanket statement in the first Luckstone declaration that "line-by-line review was conducted to identify information exempt from disclosure."  Luckstone Dec. ¶ 31.  That indeed falls short of the agency's burden for this group of documents that were withheld in full.

However, the USMS also asserted Exemption 7(E) over these documents, arguing that

---

[11] Neither Index describes page 53, but it is another printout of substantially similar information, and the same analysis applies.

they "contain information on individuals who law enforcement believed were linked to Plaintiff (including detailed criminal history information, which was analyzed by law enforcement in furtherance of apprehension efforts)" and that they "evidence[] the types of individuals law enforcement may investigate in connection with apprehension efforts for an individual wanted for homicide" that could in turn allow future fugitives to "decipher the relationship links law enforcement looks for . . . and modify their actions accordingly to prevent capture."  2d *Vaughn* Index at 12–13.

Much of the remaining information on these pages is case identifying numbers and other internal identifying codes, which the Court has already determined was permissibly redacted under Exemption 7(E).  *See* Mem. Op. at 13; *supra* at 11.  And although Mr. Woodward is correct that it is generally public knowledge "that law enforcement maintains databases that contain information of this type," Pl.'s Opp'n at 19, the Court is persuaded by the combination of the USMS's justification and its own review of the printouts that the collective detail maintained in the database may be more than the sum of its parts.  Other courts have accepted similar reasoning that "[k]nowing what information is collected, how it is collected, and more importantly, when it is *not* collected, is information that law enforcement might reasonably expect to lead would-be offenders to evade detection."  *Soghoian v. U.S. Dep't of Just.*, 885 F. Supp. 2d 62, 75 (D.D.C. 2012).  Accordingly, much of the non-personal information maintained in the database is also permissibly withheld under Exemption 7(E).

Once all the information that is permissibly withheld under 7(C) or 7(E) is redacted, all that would be left is "an essentially meaningless set of words and phrases."  *Mead Data Cent.*, 566 F.2d at 261.  Therefore, the Court holds that these documents were not reasonably segregable and grants summary judgment to the USMS for this page range.

*f.  Pages 71–127*[12]

The USMS categorically describes this page range as containing "fax cover sheets requesting documentation and information from third parties, in connection with a law enforcement investigation of the Plaintiff."  2d *Vaughn* Index at 16.  At the outset, the Court notes that while there are a few fax cover sheets within that page range, most of the pages are actually attachments to those faxes.  Specifically, the attachments consist of court orders and supporting documentation ordering phone companies to release requested information on certain phone numbers.

Complicating matters, the court orders and supporting documentation were filed under seal.  "[R]ecords covered by an injunction, protective order, or held under court seal are not subject to disclosure under FOIA."  *Senate of Com. of P.R. v. U.S. Dep't of Just.*, No. 84-cv-1829, 1993 WL 364696, at *6 (D.D.C. Aug. 24, 1993) (citing *GTE Sylvania, Inc. v. Consumers Union of the U.S., Inc.*, 445 U.S. 375, 386–87 (1980)).  But the mere existence of a sealing order does not necessarily mean that an agency record is exempt under FOIA; rather, "the proper test for determining whether an agency improperly withholds records under seal is whether the seal, like an injunction, *prohibits* the agency from disclosing the records."  *Morgan v. U.S. Dep't of Just.*, 923 F.2d 195, 197 (D.C. Cir. 1991); *see also Concepcion v. F.B.I.*, 699 F. Supp. 2d 106, 112 (D.D.C. 2010) (denying summary judgment to an agency who had failed to meet its burden of showing that a sealing order prohibited disclosure of a draft affidavit).

---

[12] Plaintiffs challenged the page range 72–127, but the *Vaughn* Index groups page 71 with this range as well.  Given that page 71 is substantially similar to other pages within this range, the Court includes page 71 in its analysis as well.

The documents at issue, while they were at one point filed under seal,[13] are in the USMS's possession and are undeniably responsive to the request.  It is therefore the USMS's burden to show that the court's sealing order in fact functions as a ban on the voluntary release of these materials.  *See Morgan*, 923 F.2d at 198 ("DOJ will have the burden of demonstrating that the court issued the seal with the intent to prohibit the DOJ from disclosing the notes as long as the seal remains in effect."); *Senate of Com. of P.R.*, 1993 WL 364696, at *7 ("The Defendants have the burden of showing the existence of the court seal, that the documents are subject to the court order, and that the court issued the seal with the intent to prohibit the Defendants from disclosing the documents as long as the seal remains in effect.").  That burden must be met for *each* of the withheld documents, meaning not only the court orders but also the supporting documentation, application, and faxes.

The USMS has not even acknowledged that the withheld documents related to a sealed matter, much less attempted to meet that burden.  Rather, it withheld the documents in full based on 7(E) and provided only a vague and incomplete description of their contents, effectively attempting a *Glomar* response that declined to answer whether there was information about the use of cell phone tracking technology at all—even though that was the primary focus of the request.  *See* Ex. A of Compl., ECF No. 1-1 (requesting "[a]ll records in any way relating to, pertaining to, or mentioning the use of any cell phone tracking technology during the investigation of the shooting death of Officer Keith Houts").

---

[13] This Circuit has held that similar electronic surveillance orders, and the accompanying applications, documentation, and dockets, are judicial records that carry a presumption of public access.  *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1128 (D.C. Cir. 2020).  This District is currently undergoing the process of unsealing *all* such electronic surveillance orders from this District, "in redacted form as appropriate."  *Matter of Leopold*, No. 20-mc-95, 2020 WL 7264050, at *7 (D.D.C. Dec. 10, 2020).

An actual *Glomar* response would have been inappropriate here for reasons already explained.  The general concept of cell phone data collection and tracking is already "well known to the public," *Founding Church of Scientology*, 610 F.2d at 832 n.67, and the specific types of information that may be collected and the standards by which they may be released have in fact been the focus of a great deal of public and judicial attention, *see Carpenter*, 138 S. Ct. at 2211–12; *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1128 (D.C. Cir. 2020).[14]  There is therefore no risk of future circumvention of the law inherent in revealing the fact that the USMS sought and obtained court orders for certain cell phone records in the course of investigating Mr. Woodward.  That information would not in any way "reduce or nullify" the effectiveness of obtaining such information by court order given that the availability of that technique is already well-known.  *Reps. Comm. for Freedom of Press v. FBI*, 369 F. Supp. 3d at 222.

It is also not clear to the Court from its *in camera* review of the documents that the USMS is actually prohibited from releasing this information.  Each of the Orders contains nearly identical language sealing the case and prohibiting the phone company and its employees from disclosing the existence of the order or the investigation, but there is no similar prohibition directed toward the government.  *See* Production, Pages 75, 78, 82, 84, 87, 90, 103, 107, 122.   In addition, the government's rationale for requesting sealing in the applications was that disclosure would jeopardize the ongoing investigation, *see* Production, Pages 93, 98, 110, 115, 125, which is obviously no longer a concern at this point.

---

[14] Of course, this is a FOIA case, not a Fourth Amendment one.  The Court need not, and does not, reach any conclusions about the constitutionality of the USMS's actions in the course of apprehending Mr. Woodward.

This Circuit has "discouraged serial summary judgment motions after the government's first loss." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 587 (D.C. Cir. 2020).  However, out of an abundance of caution and respect for the judicial process of another district court, the Court will permit the USMS a third and final chance to meet its burden with respect to these documents, by providing additional evidence "such as transcripts and papers filed with the sealing court, casting light on the factors that motivated the court to impose the seal; . . . sealing orders of the same court in similar cases that explain the purpose for the imposition of the seals; or . . . the [sealing] court's general rules or procedures governing the imposition of seals." *Morgan*, 923 F.2d at 198.  If the USMS does not wish to assert that the seal on this 15-year-old case prohibits disclosure, it should conduct a line by line segregability analysis of this page range and release any non-exempt portions thereof.[15]

### g.  Pages 128–137

Pages 128–137 are printouts of USMS database, similar to the printouts discussed in the 44–53 page range.  2d *Vaughn* Index at 17.  It includes "internal law enforcement identifying numbers, alias information, fingerprint information, detailed criminal history analysis, data indicating law enforcement queries of an internal, nonpublic system, extradition information, and assessment regarding the danger an individual may pose to law enforcement and the public." *Id.* at 18.  But unlike the previous printouts, which contained third party information, these printouts contain information about Mr. Woodward.

---

[15] The Court acknowledges that this page range contains some information that could be permissibly redacted under the asserted FOIA exemptions.  But the agency has not fulfilled its obligation to provide all reasonably segregable information with respect to this page range.  *See* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt . . . .").

The Court must therefore determine whether these documents were properly withheld in full under Exemption 7(E).  At least some of the information, such as internal law enforcement identifying numbers, was properly withheld for the same reasons in these documents as in others. Similarly, references to other databases that were queried or the section on risk evaluation on page 137 are demonstrative of investigation techniques that might, at least indirectly, increase the risk that would-be fugitives "evade detection and capture."  *Id.* at 18.  "In evaluating whether Defendants have carried their burden of showing a risk of circumvention of the law, the court is fully cognizant of the low bar that the Court of Appeals has set for establishing such risk."  *Long v. Immigr. & Customs Enf't*, 149 F. Supp. 3d 39, 53 (D.D.C. 2015).  Although the Court harbors some skepticism of the USMS's concerns, the FOIA statute only requires that the Agency show disclosure "could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  At least for the information described thus far, the combination of the *Vaughn* Index and *in camera* review satisfy that low burden.

But the USMS again runs into a segregability issue.  Even though certain portions of the printouts might risk future circumvention of the law, the Court is not persuaded for this page range that nothing was reasonably segregable.  The USMS's previous concerns about disclosure allowing for inferences about the types of relationships that are investigated is nonexistent here, as all the documents relate to Mr. Woodward.  And the USMS lists right in its *Vaughn* Index several categories of information that are included in the printouts: "alias information, fingerprint information, [and] detailed criminal history analysis."  2d *Vaughn* Index at 18.  The USMS has done nothing to establish why the collection of that type of information is "not generally known to the public" or assess "the way(s) in which individuals could possibly circumvent the law" if that information relating to Mr. Woodward were released.  *See Am. Immigr. Council v. U.S.*

*Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 247 (D.D.C. 2013).  Nor is it clear to the Court even after *in camera* review that everything in these pages is wholly exempt.

Accordingly, the USMS will be ordered to conduct a line-by-line segregability analysis for pages 128–137 and release any non-exempt information consistent with the reasoning in this opinion.  Because the parties will need to renew their cross-motions for summary judgment with respect to the previous page range in any event, any unresolved challenges to that redaction may be raised at that time as well.

## V.  CONCLUSION

For the foregoing reasons, Defendant's renewed motion for summary judgment (ECF No. 40) is granted in part and denied in part and Plaintiff's renewed cross-motion for summary judgment (ECF No. 43) is granted in part and denied in part as described herein.  With respect to the pages 71–137, the Court will deny summary judgment to either party and order the parties to submit a Joint Status Report two weeks after the additional ordered actions have been taken, advising the Court of whether any outstanding issues remain in this case.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 1, 2022                                          RUDOLPH CONTRERAS
                                                                 United States District Judge