# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| MARIO DION WOODWARD, | : | | |
| | : | | |
| *Plaintiff*, | : | Civil Action No.: | 18-1249 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 53, 56 |
| | : | | |
| U.S. MARSHALS SERVICE, | : | | |
| | : | | |
| *Defendant*. | : | | |

## <u>MEMORANDUM OPINION</u>

### Denying Defendant's Motion for Summary Judgment; Granting Plaintiff's Cross-Motion for Summary Judgment

## I.  INTRODUCTION

Plaintiff Mario Dion Woodward filed a Freedom of Information Act ("FOIA") request in 2015 seeking records pertaining to the use of any cell phone tracking technology during a criminal investigation that ultimately led to his conviction and death sentence for capital murder. He believes that investigating authorities, including members of Defendant United States Marshals Service ("USMS"), may have used cellphone tracking technology without a warrant in furtherance of that investigation.  After Plaintiff filed suit in 2018, this Court considered and denied the parties' cross-motions for summary judgment in 2021, finding that further explanation and *in camera* review of redactions applied to the documents USMS produced to Plaintiff was required.  *Woodward v. U.S. Marshals Serv.* ("*Woodward I*"), 534 F. Supp. 3d 121 (D.D.C. 2021).  After *in camera* review, in February of this year the Court granted in part and denied in part the parties' renewed cross-motions for summary judgment and, as relevant here, ordered USMS to submit proof that sealed electronic surveillance orders and related materials, redacted in full at pages 71–127 of the production, were in fact prohibited from disclosure under the

analysis laid out in *Morgan v. U.S. Dep't of Just.*, 923 F.2d 195 (D.C. Cir. 1991).  *Woodward v. U.S. Marshals Serv.* ("*Woodward II*"), No. 18-cv-1249, 2022 WL 296171 (D.D.C. Feb. 1, 2022).[1]

In response to the Court's opinion in *Woodward II*, USMS made a supplemental production on April 11, 2022 replacing the total withholding of pages 71, 79, 104, 118, and 119 with line-by-line redactions, but leaving the remainder of pages 71–127 fully redacted.  *See* Joint Status Report ¶ 6, ECF No. 50.  The propriety of that continued withholding is the sole issue remaining in this case and the subject of the parties' second renewed cross-motions for summary judgment, which are ripe for consideration.  For the reasons stated below, USMS's motion for summary judgment is denied and Plaintiff's cross-motion for summary judgment is granted.

## II.  LEGAL STANDARD

The Freedom of Information Act is meant "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  The FOIA statute "directs that 'each agency, upon any request for records . . . shall make the records promptly available to any person' unless the requested records fall within one of the statute's nine exemptions."  *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting 5 U.S.C.

---

[1] The Court presumes familiarity with the undisputed material facts of this case, as laid out in its previous opinions.  *See Woodward II*, 2022 WL 296171, at *1–2 & n.1; Def.'s Responses to Pl.'s Statement of Allegedly Material Facts, ECF No. 57–1 (disputing only the materiality of certain facts, Plaintiff's characterization of the Court's opinion in *Woodward II*, and Plaintiff's characterization of Defendant's supplemental production on April 11, 2022, which is confirmed by Defendant's own *Vaughn* index, *see* Ex. A to 3d Suppl. Luckstone Decl. at 3, ECF No. 53–2, but not disputing any facts that bear on the legal questions at issue here).

§ 552(a)(3)(a).  Review of an agency's FOIA determination is *de novo*.  5 U.S.C. § 552(a)(4)(B).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)).  Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

To prevail on a motion for summary judgment in a FOIA case, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements."  *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (internal quotation marks omitted) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)).  "The agency bears the burden of establishing that a claimed exemption applies," *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014), and exemptions are "given a narrow compass," *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 151 (1989).  "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)).

## III.  ANALYSIS

USMS originally withheld pages 71–127, which consist mostly of pen register[2] orders and related application materials, in full pursuant to FOIA Exemption 7(E) and "the privacy exemptions"—namely, Exemptions 6, 7(C), and 7(F).[3]  *See* Ex. 2 to 1st Luckstone Decl. ("1st *Vaughn* Index") at 3, ECF No. 27–3; Ex. A to 2d Luckstone Decl. ("2d *Vaughn* Index") at 16, ECF No. 40–4.  *In Woodward II*, the Court acknowledged that certain material in this page range could be permissibly redacted under the privacy exemptions, but that Exemption 7(E) was inapplicable.  *Woodward II*, 2022 WL 296171, at *11–12 & n.15.  In addition, though not raised by USMS, the Court noted that the withheld documents were ordered sealed by another court.  *Id.* at *11.  The Court explained that "the mere existence of a sealing order does not necessarily mean that an agency record is exempt under FOIA," and that it was "USMS's burden to show that the court's sealing order in fact functions as a ban on the voluntary release of these materials."  *Id.*  (citing *Morgan*, 923 F.2d at 197–98).  In its second renewed motion for summary judgment, USMS makes a limited attempt to carry that burden but mainly focuses on a new claim that FOIA Exemption 3 shields the records from disclosure.  Def.'s Renewed Mot. for Summ. J. ("Def.'s Mot.") at 3–6, ECF No. 53.  Plaintiff's cross-motion contends that the seal

---

[2] A pen register is a device that records numbers dialed from a telephone.  *See* 3d Suppl. Luckstone Decl. ¶ 8 n.2, ECF No. 53–2.

[3] It bears mention that USMS originally described pages 71–127 inaccurately as merely "fax cover sheets requesting documentation and information from third parties, in connection with a law enforcement investigation of the Plaintiff."  2d *Vaughn* Index at 16, ECF No. 40–4.  As Plaintiff points out, but for the Court's decision to conduct *in camera* review, Plaintiff and the Court likely would not have learned that this page range was in fact almost entirely made up of pen register applications, orders, and related materials.  *See* Pl.'s Reply Mem. of Law in Further Suppl. of Pl.'s Renewed Mot. for Summ. J. ("Pl.'s Reply") at 8 n.3, ECF No. 59.  The agency's "hide the ball" approach to FOIA is not consistent with its obligations under the statute and is unacceptable.  The Court is left to wonder: what other representations made in this case and, perhaps, others may be equally misleading?

does not bar disclosure under FOIA, that USMS waived it ability to assert Exemption 3 because
it failed to raise it and in fact expressly abandoned any claim to it earlier in the litigation, and that
regardless Exemption 3 would not justify the near-total withholding of pages 71–127.  Pl.'s
Mem. of Law in Supp. of Renewed Cross-Mot. for Summ. J. ("Pl.'s Cross-Mot.") at 6–23, ECF
No. 56–1.

### A.  USMS Has Not Shown that the Sealing Order Prohibits Disclosure

In *GTE Sylvania v. Consumers Union of U.S., Inc.*, 445 U.S. 375 (1980), the Supreme
Court held that documents are not "improperly" withheld from a FOIA plaintiff where an
injunction renders the agency with "no discretion" to disclose them.  *Id.* at 386.  In *Morgan*, the
D.C. Circuit distinguished *GTE Sylvania*, which involved an injunction prohibiting the agency
from disclosing the records, from cases involving sealing orders that only "prohibit the public
from viewing the notes in the public court record" but were not "intended to affect any future
decision by [the government] to release the [records] voluntarily or pursuant to a FOIA request."
*Morgan*, 923 F.2d at 197.  The Circuit held that "[i]f the seal was designed only to prohibit
[plaintiff] from obtaining the [records] from the court record of his criminal trial, [plaintiff's]
FOIA complaint is a valid attempt to obtain those notes under the FOIA, not a collateral attack
on the sealing order."  *Id.* at 198.  Accordingly, the agency bears to burden to prove that a sealing
order was also intended to prohibit future disclosure pursuant to FOIA with evidence from "(1)
[the] sealing order from the court . . .; (2) extrinsic evidence about the intended scope of a
purported sealing order; (3) orders of the same court in similar circumstances; and (4) the issuing
court's general rules or procedures."  *Judicial Watch v. U.S. Dep't of Just.*, 813 F.3d 380, 383
(D.C. Cir. 2016) (citing *Morgan*, 923 F.2d at 197–98).

5

Because pages 71–127 are subject to sealing orders, in *Woodward II* the Court, quoting *Morgan* at length, ordered USMS to provide such evidence.  *Woodward II*, 2022 WL 296171, at *12 (quoting *Morgan*, 923 F.2d at 198).  Despite the Court's clear instructions, including a warning that this would be USMS's "final chance to meet its burden," *id.*, USMS's motion fails to even mention *Morgan*, let alone grapple directly with the substantive analysis it requires.  Remarkably, USMS also fails to respond to extensive argument based on *Morgan* in Plaintiff's cross-motion.  *See, e.g.*, Pl.'s Cross-Mot. at 7–8 ("Under the controlling rule of *Morgan*, the Court need not reach any further to dispose of this case.").  The closest USMS got was to cite a later D.C. Circuit case interpreting *Morgan* in an erroneous attempt to merge the *Morgan* analysis with the analysis of its claim to Exemption 3.  Def.'s Combined Reply in Further Supp. of Renewed Mot. for Summ. J. && Opp'n to Pl.'s Renewed Cross-Mot. for Summ. J. ("Def.'s Reply") at 2, ECF No. 57 (citing *Jud. Watch v. Dep't of Just.* 813 F.3d 380 (D.C. Cir. 2016)).[4] However, the third declaration of USMS Senior Associate General Counsel Charlotte Luckstone, attached to USMS's motion, *see* 3d Suppl. Luckstone Decl., ECF No. 53–2, does include relevant argument and factual allegations responsive to the question of whether the sealing orders were intended to permanently enjoin disclosure pursuant to FOIA, which the Court has endeavored to retrofit to the *Morgan* analysis.[5]  As explained below, the Court finds that USMS has not carried its burden to show that the sealing orders were intended to bar disclosure.

---

[4] As laid out below, the two analyses are separate.  *See Jud. Watch*, 813 F.3d at 383 (explaining that any agency properly withholds records when they are subject to an injunction "[i]n addition" to when they fall within a statutory exemption); *Morgan*, 923 F.2d at 198–199 & n.5 (explaining that the court's analysis of whether documents were properly withheld from the FOIA plaintiff pursuant to an injunction was separate from any later analysis of whether the records sought could be withheld pursuant to a statutory exemption).

[5] Throughout this opinion, the Court refers to arguments made in USMS's motion and reply as well as arguments made in Ms. Luckstone's third supplemental declaration collectively as arguments made by USMS.

1. Evidence from the Sealing Orders[6]

Pages 71–127 consist of several nearly identical sets of pen register orders and related application materials, as well as cover sheets for faxes transmitting those materials.  A section of each order requires that "this order and the application be sealed until otherwise ordered by the court and that [the relevant telecommunications company], and any other telecommunications related carrier, its agents and employees shall not disclose the existence of this order or the existence of this investigation to the subscriber or to any other person, unless or until otherwise ordered by the court."  *See e.g.*, Production Page 90.[7]  As the Court explained in *Woodward II*, the orders "prohibit[] the phone company and its employees from disclosing the existence of the order or the investigation, but there is no similar prohibition directed toward the government." *Woodward II*, 2022 WL 296171, at *12.  In addition, the orders contain predicate findings that "the information sought is relevant and material to an ongoing criminal investigation, and that disclosure to any person of this investigation or of this application and order entered in connection therewith, would seriously jeopardize the investigation."  *See, e.g.*, Production Page 88.  Because the text of the orders does not bind the government to nondisclosure, and because the stated goal of the nondisclosure obligations the orders place on phone companies and their employees is to protect an investigation that ended in 2008, nothing in the orders supports an inference that they were intended to forever enjoin the government from disclosure pursuant to FOIA.  *See Judicial Watch*, 813 F.3d at 383–84 ("An ambiguous court order does not protect a record from disclosure pursuant to the FOIA.").

---

[6] Because the Court will order pages 71–127 produced with relevant redactions, it sees no obstacle to analyzing the language of the sealing orders in this opinion.

[7] This refers to USMS's *in camera* production.

USMS points out that the orders state that they are issued pursuant to the Pen Register Act, 18 U.S.C. § 3123, which provides for the issuance of *ex parte* orders authorizing the installation and use of pen registers and trap and trace devices.[8]  The Pen Register Act also requires that such orders contain sealing and nondisclosure provisions:

> An order authorizing or approving the installation and use of a pen register or trap and trace device shall direct that—
> (1)    the order be sealed until otherwise ordered by the court; and
> (2)    the person owning or leasing the line or other facility to which the pen register or a trap and trace device is attached or applied, or who is obligated by the order to provide assistance to the applicant, not disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise ordered by the court.

*Id.* § 3123(d).  USMS argues that the "statutory language" of Pen Register Act binds USMS "to not disclose the existence of the pen register or the existence of the underlying investigation publicly unless or until otherwise ordered by the court."  3d Suppl. Luckstone Decl. ¶ 24.  The Court cannot agree.  The D.C. Circuit has found that that the Pen Register Act's nondisclosure requirement, § 3123(d)(2), "does not apply to the government."  *Labow v. U.S. Dep't of Just.*, 831 F.3d 523, 527–28 (D.C. Cir. 2016); *see also In re Leopold*, 300 F. Supp. 3d 61, 86 (D.D.C. 2018).  In addition, mirroring the language in the orders quoted above, the Pen Register Act requires the court, before ordering a pen register or trap and trace device, to confirm "that the information likely to be obtained by such installation and use is *relevant to an ongoing criminal investigation*."  18 U.S.C. § 3123(a)(1) (emphasis added).  This suggests that sealing orders entered pursuant to the Pen Register Act are primarily intended to prevent disclosure during the pendency of the relevant criminal investigation and prosecution, and perhaps even during related prosecutions, but not that they are intended to restrict "any future decision by [the government]

---

[8] A trap and trace device records the telephone numbers of callers to a particular telephone.  *See* 3d Suppl. Luckstone Decl. ¶ 8 n.2.

to release the [records] . . . pursuant to a FOIA request." *Morgan*, 923 F.2d at 195; *compare, e.g.*, *Concepcion v. FBI*, 699 F. Supp. 2d 106, 112 (D.D.C. 2010) (disagreeing with the government's assertion that the existence of sensitive information in a sealed affidavit "strongly support[s] the conclusion that the Sealing Order was meant to prohibit any future disclosure" because the "Sealing Order itself presents no rationale for its issuance . . . and the defendant presents no transcript or other documentation to cast light on the factors that motivated the court to impose the seal"), *with Agility Pub. Warehousing Co. K.S.C. v. NSA*, 113 F. Supp. 3d 313, 336 (D.D.C. 2015) ("The text of the [nondisclosure order] makes plain the NSA's lack of discretion to access and disclose to the plaintiff the requested metadata.").

USMS's additional arguments about the text and structure of the Pen Register Act are unpersuasive. USMS makes a structural argument based on the fact that the Pen Register Act includes both a sealing provision, 18 U.S.C. § 3123(d)(1), and a nondisclosure provision, *id.* § 3123(d)(2). It argues that "[i]f (d)(1) were not intended to control the discussion or dissemination of the order by the requesting Department of Justice entities (the U.S. Attorney's Office and the law enforcement agency), it would be superfluous to (d)(2)." 3d Suppl. Luckstone Decl. ¶ 25. But these provisions serve different purposes: the sealing provision in (d)(1) restricts *access*, while the nondisclosure provision in (d)(2) restricts *disclosure*. This is precisely the distinction that the D.C. Circuit identified in *Morgan*, and on which the propriety of USMS's withholding turns. *See Morgan*, 923 F.2d at 197 (distinguishing a seal intended to "prohibit the public from viewing the [records] in the public court record" from one intended "to affect any future decision by [the government] to release the [records] voluntarily or pursuant to a FOIA request"). This is why it is of central importance that the D.C. Circuit has found that the nondisclosure provision "does not apply to the government." *Labow*, 831 F.3d at 528.

USMS also argues that the Pen Register Act bars disclosure because it is a "predicate statute for withholding information from public access" under Exemption 3.[9]  3d Suppl. Luckstone Decl. ¶ 23.  To be sure, the D.C. Circuit has held that the Pen Register Act is a qualifying statute under Exemption 3 because it "refers to particular types of matters to be withheld."  *Labow*, 831 F.3d at 527–28 (citing 5 U.S.C. § 552(b)(3)(A)(ii)).  But whether a statute "refers to particular types of matters to be withheld" for purposes of Exemption 3 is separate from whether it independently prohibits the government from disclosing the information.  The Pen Register Act provides for the entry of sealed court orders in response to applications for pen register or trap and trace devices, but as explained above, it neither requires that pen register orders enjoin the government from disclosure nor binds the government to any nondisclosure requirement independent of such orders.  As Plaintiff notes, that Congress declined to place any such nondisclosure obligation on the Government is instructive for purposes of the *Morgan* analysis.  Pl.'s Cross-Mot. at 16–17.

In summary, USMS has not identified anything in the text of the sealing orders at issue or in the statute that dictated their contents to support an inference that the issuing court intended them to permanently bar the government from future disclosure pursuant to FOIA.[10]

---

[9] Exemption 3 permits withholding of records "specifically exempted from disclosure by statute" where the statute "(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(A).

[10] The Court notes that a different interpretation could be possible if it were presented with a different factual setting in which the sealing orders were issued closer in time to the FOIA request or the government alleged a plausible connection between the orders and another ongoing investigation.

2.  Extrinsic Evidence

The *Morgan* court held that agencies can present evidence of the intended scope of a sealing order from "transcripts and papers filed with the sealing court, casting light on the factors that motivated the court to impose the seal." *Morgan*, 923 F.2d at 198.  Beyond noting that the sealing court has not entered an order unsealing the relevant records, USMS has pointed to no such extrinsic evidence to suggest that the sealing orders were intended to enjoin any future disclosure pursuant to FOIA.  3d Suppl. Luckstone Decl. ¶ 5 (explaining only that a "review of records associated with the federal criminal matter reveals only the initial complaint . . . , arrest warrant with supporting affidavit, and motion to dismiss").  However, the applications for the pen register orders all request that the application and order be sealed "since disclosure at this time would seriously jeopardize the investigation." *See, e.g.*, Production Page 125.  They further request that the court order only the relevant telecommunications companies and their agents and employees "not to disclose the existence of this order or of this investigation." *Id.*  Just as with the corresponding language in the orders themselves, the text of these applications suggests that the sealing court would have been primarily concerned with disclosure during the pendency of the criminal investigation and does not support an inference that the seal was intended to enjoin any future disclosure by the government pursuant to FOIA.

3.  Evidence from the Sealing Court's General Rules or Procedures[11]

USMS argues that communications with the U.S. Attorney's Office for the Middle District of Alabama, where the sealing court sits, together with references to administrative procedures in that district, show that the sealing orders were intended to bar disclosure under

---

[11] USMS has declined to present any evidence from "orders of the same court in similar circumstances," so the Court omits a section on that topic. *Judicial Watch*, 813 F.2d at 383 (citing *Morgan*, 923 F.2d at 197–98).

FOIA.  Specifically, both the Civil Chief and Criminal Chief of the U.S. Attorney's Office "informed" USMS that the "practice in that jurisdiction" is for sealed documents to remain sealed unless otherwise ordered, and specifically for "pen-trap orders and applications/affidavits (such as the ones at issue in the present litigation) [to] remain under seal and not subject to release pursuant to discovery or FOIA obligations unless first unsealed by the appropriate Court."  3d Suppl. Luckstone Decl. ¶¶ 7–8.  USMS states that the Criminal Chief added that "pen-trap orders and applications/affidavits remain under seal as they are indicative of sensitive law enforcement techniques and procedures."  *Id.* ¶ 8.

But it is the intention of the sealing court, not the opinion of the U.S. Attorney's Office, that matters under *Morgan*.  The D.C. Circuit stated clearly that, "in order to meet its burden of proof, the [government] may need to seek a clarification *from the court that issued the seal*."  *Morgan*, 923 F.2d at 198 (emphasis added).  Courts in this District have relied on such clarifying instructions obtained by agencies in FOIA litigation in order to hold that otherwise ambiguous sealing orders prohibit disclosure.  *See, e.g.*, *Awan v. U.S. Dep't of Just.*, 46 F. Supp. 3d 90, 92 (D.D.C. 2014) ("[D]efendants have supplied an order issued by the Southern District of New York . . . stating that the material witness warrant application 'was sealed with the intent to prohibit its disclosure . . . for as long as the seal remains in effect.");  *Borda v. U.S. Dep't of Just.*, 306 F. Supp. 3d 306, 316 (D.D.C. 2018) ("The Department has now submitted documentation from each of the judges who originally sealed the four plea agreements regarding the status and intent of those sealing orders. . . .  Each verifies that the relevant plea agreement remains under seal and may not be disclosed.").

Here, USMS does not claim to have contacted the sealing court and has not provided any instruction or order from the sealing court clarifying its intent.  *See* Pl.'s Reply at 1("The

USMS'[s] opposition to the Cross-Motion does not point to any order or instruction from the Alabama Court forbidding the USMS from disclosing pages 71–127[.]").  Instead, it cites to the local rules for making sealed filings in civil cases, which it argues "indicate there is no public right of access to documents filed under seal" and thereby "reinforce the concept that documents filed under seal are subject to additional protections."  3d Suppl. Luckstone Decl. ¶ 12; *id.* Ex. B at 12.  Again, this overlooks the distinction at the heart of *Morgan* between a sealing order that limits *access* and an injunction that restricts *disclosure*.  Moreover, the local rules for filing under seal in civil cases have limited relevance to the present case, which involves sealed court orders in a criminal case.[12]  This is not enough.  *See Judicial Watch*, 813 F.2d at 383–84 ("An ambiguous court order does not protect a record from disclosure pursuant to the FOIA.").

In sum, evidence from the text of the sealing orders and the statute that dictates their contents, and extrinsic evidence from the applications for those orders, does not support USMS's argument that the seal was intended to function as a permanent injunction barring the government from disclosing the materials pursuant to FOIA.  While USMS has pointed to limited evidence from the Middle District of Alabama that the seal has not been ordered removed, it has not met its burden to show that the "intended effect of the sealing order" was to "prohibit [the government] from releasing the [records]."  *Morgan*, 923 F.2d at 198.

---

[12] USMS also cites to a local general order adding "new security procedures to protect highly sensitive documents" in response to recent "breaches" of "private sector and government computer systems."  Ex. C to 3d Suppl. Luckstone Decl., General Order No. 2:21-mc-3932-ECM; 3d Suppl. Luckstone Decl. ¶ 13 & n.3.  As USMS concedes, the general order does not apply to applications and orders pursuant to the Pen Register Act.  *Id.*  The general order also simply outlines procedures to ensure that sealed documents remain secure from unsanctioned access and sheds no light on whether sealing orders should be interpreted as injunctions barring future disclosure pursuant to FOIA.  Even if it did, the general order is dated January 8, 2021, while the documents sought in the present case were ordered sealed in 2006.

### 4. Respect for the Judicial Process

USMS makes a final argument, referring to the sealing orders entered by the Alabama court, that this Court "lacks the authority to review, let alone nullify, the decisions of other federal courts." Def.'s Mot. at 5. USMS cites three cases to support its argument. Two of these are one-page unpublished orders affirming the district court's finding that it "lacked the authority to review decisions of other federal courts." *Snipes v. Chutkan*, 839 F. App'x 563 (D.C. Cir. 2021); *Nie v. Gov't of United States*, No. 21-cv-5227, 2022 WL 412479, at *1 (D.C. Cir. Feb. 9, 2022). But the plaintiffs in those cases sought to challenge, in the nature of a direct appeal, adverse rulings on motions duly issued by other district courts. *See Snipes v. Chutkan*, No. 20-cv-1477, 2020 WL 3265428 (D.D.C. June 16, 2020); *Nie v. Gov't of United States*, No. 21-cv-1229, 2021 WL 3510656 (D.D.C. Aug. 5, 2021). USMS's third citation is to a wholly irrelevant case in which the Supreme Court decided that certain fines levied for contempt of court were criminal and therefore could be imposed only by a jury. *See Int'l Union, United Workers of America v. Bagwell*, 512 U.S. 821, 823 (1994). These cases say nothing about whether a court may require disclosure under FOIA of documents sealed in a proceeding before another court.

By contrast, the D.C. Circuit has held, in the context of interpreting whether a seal also prohibits disclosure, that "a defendant's right to obtain information from the government in discovery under the Federal Rules of Criminal Procedure is separate and independent from his right to obtain the information under the FOIA" and therefore that "there are situations in which FOIA will permit access to information that would not be available through discovery." *Morgan*, 923 F.2d at 198 (second part quoting *North v. Walsh*, 881 F.2d 1088, 1096 (D.C. Cir. 1989)). Accordingly, where "the seal was not intended to prohibit the [government] from releasing the [records]," a FOIA request is "a valid attempt to obtain the [records] under the

FOIA, not a collateral attack on the sealing order." *Id.*   Because USMS has not shown that the sealing orders here prohibited disclosure pursuant to FOIA, such disclosure "shows no lack of respect for the judicial process or the . . . [sealing] court." *Id.*

### B. USMS Waived Its Ability to Assert Exemption 3

Plaintiff argues that USMS waived its ability to assert Exemption 3 because it did not substantively assert it earlier and in fact explicitly disclaimed its applicability.  Pl.'s Cross-Mot. at 12–15.  The D.C. Circuit has established a "general rule" that FOIA defendants "must assert all exemptions at the same time, in the original district court proceedings"  because "the delay caused by permitting the government to raise its FOIA exemption claims one at a time interferes both with the statutory goals of efficient, *prompt*, and full disclosure of information . . . and with interests of judicial finality and economy."  *Maydak v. Dep't of Just.*, 218 F.3d 760, 765 (D.C. Cir. 2000) (cleaned up) (emphasis in original).  However, it has endorsed a "flexible approach" to enforcing this rule in recognition of the reality that FOIA exemptions protect "'legitimate governmental and private interests' that might be 'harmed by release of certain types of information.'"  *August v. FBI*, 328 F.3d 697, 699–700 (D.C. Cir. 2003) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)).  Specifically, the D.C. Circuit has identified "two exceptions for unusual situations, largely beyond the government's control," in which an untimely assertion of FOIA exemptions may be overlooked: (1) in "extraordinary circumstances, where, from pure human error, the government failed to invoke the correct exemption and will have to release information compromising national security or other sensitive, personal, private information;" or (2) where a "substantial change in the factual context of the case or an interim development in the applicable law forces" the delay.  *Maydak*, 218 F.3d at 767.

While the D.C. Circuit laid out this framework in the context of an agency seeking to raise exemptions for the first time on appeal, courts in this District routinely apply its principles in exercising discretion over whether to accept belated invocations of FOIA exemptions during the pendency of district court proceedings.  *See, e.g.*, *Shapiro v. U.S. Dep't of Just.*, No. 13-cv-555, 2016 WL 3023980, at *3–4 & n.1 (D.D.C. May 25, 2016) (explaining that the D.C. Circuit has "recognize[d] that a district court retains the discretion to find that such an untimely assertion has been forfeited" and listing illustrative cases).  This makes sense, as unnecessary delay at the district level equally undermines FOIA's purpose to promote "efficient, *prompt*, and full disclosure of information" and the interest of judicial economy.  *Maydak*, 218 F.3d at 765 (emphasis in original); *see, e.g.*, *Farahi v. FBI*, No. 15-cv-2122, 2017 WL 11662716, at *3 (D.D.C. Jan. 23, 2017) (denying the government's motion to assert additional exemptions in a future motion because it would run afoul of these interests).  It would also be arbitrary and create bad incentives for the applicability of the *Maydak* waiver rule to turn on whether the district court simply denied the agency's summary judgment motion or also entered judgment for the plaintiff.  For example, the rule would be rendered a nullity where the plaintiff has not also moved for summary judgment, such that there is no risk of an appealable final judgment.  *See August*, 328 F.3d at 699 (explaining that the "general rule" against belated assertions of FOIA exemptions serves the goal of avoiding "cat and mouse" litigation tactics).

Accordingly, the Court considers Plaintiff's waiver claim under the *Maydak* framework. As an initial matter, it is in fact the case that, not only did USMS fail to timely assert Exemption 3, it expressly abandoned it in favor of Exemption 7(E)[13] before filing its first motion for

---

[13] Exemption 7(E) permits withholding of records "compiled for law enforcement purposes" "to the extent the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or

summary judgment in September 2020.[14]  In the roughly 27 months since, during which the

Court considered two sets of cross-motions for summary judgment, USMS did not raise

Exemption 3 again.  In *Woodward I*, issued on April 20, 2021, the Court held, with respect to

pages 72–127,[15] that USMS's explanation for invoking Exemption 7(E) was "vague[]" and

ordered USMS to "do more to justify its withholdings."  *Woodward I*, 534, F. Supp. 3d at 131–

32.  Considering the parties' renewed cross-motions for summary judgment almost ten months

later, the Court in *Woodward II* again explained that USMS's explanation for invoking

Exemption 7(E) was "vague and incomplete," and held that Exemption 7(E) was inapplicable

because "[t]here is . . . no risk of future circumvention of the law inherent in revealing the fact

that the USMS sought and obtained court orders for certain cell phone records in the course of

investigating Mr. Woodward."  *Woodward II*, 2022 WL 296171, at *11–12.  Still, recognizing

that the records were sealed, "out of an abundance of caution and respect for the judicial process

of another district court," the Court permitted USMS a "third and final chance to meet its

---

prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7).

    [14] Plaintiff initiated this case against the Department of Justice, Civil Rights Division and USMS on May 29, 2018.  *See* Compl., ECF No. 1.  The Civil Rights Division made a responsive production on October 5, 2018 and was voluntarily dismissed on October 25, 2019.  *See* November 7, 2018 Joint Status Report ¶ 5, ECF No. 8; Stipulation of Dismissal, ECF No. 20. Negotiations between Plaintiff and USMS continued throughout this period, and USMS produced responsive records with redactions to Plaintiff on June 14, 2019.  *See* July 10, 2020 Joint Status Report ¶ 6.  That production stamped Exemption 3 at the top of pages 71–127, *see* USMS Production at 71–127, ECF No. 33–3, but USMS never justified the purported assertion of Exemption 3 and in fact expressly withdrew it at least as early as the filing of its first motion for summary judgment on September 9, 2020, *see* 1st Luckstone Decl. ¶ 20, ECF No. 27–3 (stating that USMS "retracted the [Exemption 3] withholdings, instead asserting [Exemption 7(E)] in its place").

    [15] As explained in *Woodward II*, page 71 is substantially similar to pages 72–127, so the Court now treats them together.  *See Woodward II*, 2022 WL 296171, at *10 n.12.

burden." *Id.* at *12.  This was not an open invitation to invoke new exemptions; rather, the Court specified that USMS was to provide the particular types of evidence identified in *Morgan* to show whether the seal covering pages 71–127 was intended to prohibit disclosure irrespective of a statutory exemption.  *Id.*

As explained above, USMS largely ignored this instruction, failing even to reference the *Morgan* analysis in its present filings and instead focusing almost exclusively on its new claim to Exemption 3.  Plaintiff makes two principal arguments as to why the Court should deem any claim to Exemption 3 waived as untimely.  First, Plaintiff argues generally that USMS, after failing to "substantively raise[] Exemption 3" and then "explicitly abandon[ing] the argument," should not be permitted to "ambush Plaintiff and the Court with it years into litigation after other arguments have failed."  Pl.'s Cross-Mot. at 13.  USMS does not contest that the Exemption 3 stamp that appeared on the original production pages was not a proper invocation of the exemption, nor that it expressly abandoned its claim to it more than two years ago.

Second, Plaintiff argues that USMS has failed to show that its belated assertion of Exemption 3 should be excused under the two exceptions identified in *Maydak*.  *Id.* at 14–15. USMS does not directly dispute that neither exception applies.  Instead, it first argues, based on the D.C. Circuit's opinion in *August v. FBI*, 328 F.3d 697 (D.C. Cir. 2003), that the Court should not adopt a "rigid interpretation" of the *Maydak* waiver rule.  Def.'s Reply at 3.  The Court agrees that, in line with the "flexible approach" favored by the D.C. Circuit, *August*, 328 F.3d at 700, many cases involving belated assertions of exemption call for leniency, *see, e.g.*, *Nat'l Assoc. of Minority Veterans v. U.S. Dep't of Veterans Affairs*, No. 21-cv-1298, 2022 WL 17082841, at *10 (D.D.C. Nov. 18, 2022) (denying the agency's summary judgment motion but

permitting it to raise new exemptions in a renewed motion in part due to "the important third-party privacy interests protected by FOIA exemptions").

But this is not such a case.  In *August*, the D.C. Circuit permitted new exemptions to be raised on remand because the case fell within the exceptions identified in *Maydak*.  Specifically, the court found that government's untimely assertion was due to "human error"—in large part because "*Maydak* was not decided until well after the district court granted summary judgment"—and because "disclosure would pose a significant risk to the safety and privacy of third parties."  *Id.* at 701–02.  Curiously, USMS cites to the passage in *August* referring to these "extraordinary" circumstances, but then fails to make any argument that such circumstances are present here.  Def.'s Reply at 3.  In fact, USMS expressly states that its failure to timely assert Exemption 3 was intentional and the only "human error" was stamping the since-retracted reference to Exemption 3 on the original production pages.  *Id.* at 4.  USMS also does not assert that disclosure would risk harm to third parties—a position with which the Court agrees, subject to the limitations described *infra* Section III.C, based on its *in camera* review and the fact that Mr. Woodward's prosecution ended in 2008.  *See* Def.'s Mot. at 5 ("USMS need not show that it reasonably foresees that disclosure would harm an interest protected by Exemption 3").

 USMS next argues that the *Maydak* wavier rule only applies to exemptions raised for the first time on appeal because the D.C. Circuit's principal concern was "finality."  Def.'s Reply at 3–4 (citing *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 296 F. Supp. 3d 109, 122 (D.D.C. 2017)).  This is belied by *Maydak* itself, which makes clear that finality is just one of several interests protected by the waiver rule: "the delay caused by permitting the government to raise its FOIA exemptions claims one at a time interferes both with the statutory goals of efficient, *prompt*, and full disclosure of information and with interests of judicial finality and economy."  *Maydak*, 218

19

F.3d at 764 (cleaned up) (emphasis in original).  In service of these interests, it makes good sense that district courts routinely apply the *Maydak* analysis to belated assertions of FOIA exemptions during the pendency of district court proceedings.  *See Shapiro*, 2016 WL 3023980, at *3–4 & n.1 (listing cases).  In addition, as explained above, confining the *Maydak* waiver rule to exemptions raised for the first time on appeal would be arbitrary and encourage the type of gamesmanship that the D.C. Circuit discouraged.  *See August*, 328 F.3d at 699.

Finally, USMS claims that it could not have raised Exemption 3 earlier because "if the Marshals Service had asserted Exemption 3 and the Pen Register Act earlier in this action, that would have disclosed the existence of the pen register, contrary to the Pen Register Act and the United States District Court for the Middle District of Alabama's Orders sealing records concerning such surveillance." [16]  Def.'s Reply at 4.  This is unconvincing.  Other agencies do not adhere to this logic.  *See, e.g.*, *Shapiro v. Dep't of Just.*, No. 21-cv-313, 2020 WL 3615511, at *25 (D.D.C. July 2, 2020) (FBI claiming Exemption 3 to shield pen register records).  And regardless, courts in this Circuit have rejected similar arguments on grounds that there are other "mechanisms by which [the agency] can accomplish the goal of protecting sensitive information while at the same time satisfying its burden of proof," such as *in camera* review.  *Maydak*, 218 F.3d at 766–77 (rejecting the agency's argument that invoking Exemption 7(A) released it from the obligation to assert any other exemptions because "the mere act of producing a *Vaughn* index for the purpose of substantiating its invocation of another FOIA exemption will itself disclose the very information that the more generalized categorical showing required for Exemption 7(A) was

---

[16] Given that neither the Pen Register Act nor the Alabama court's sealing orders have changed since the beginning of the case, USMS leaves unexplained why it now feels secure publicly asserting Exemption 3 despite its expressed position that it was prohibited from doing so earlier.

designed to protect"); *see also Shapiro v. U.S. Dep't of Just.*, 239 F. Supp. 3d 100, 110–11 (D.D.C. 2017) (permitting *ex parte*, *in camera* review of an agency declaration submitted to justify a FOIA exemption); *see also Mobley v. CIA*, 924 F. Supp. 2d 24, 68 (D.D.C. 2013) (relying on *ex parte*, *in camera* review of a declaration to find Exemption 1 was properly invoked).

In *Woodward II*, the Court gave USMS leave to present arguments that the seal on pages 71–127 was intended to prevent future disclosure under the *Morgan* analysis. 2022 WL 296171, at *12. Instead, USMS focused on a new claim to Exemption 3. Because USMS not only failed to raise but specifically abandoned Exemption 3 earlier in this lengthy litigation, and because it has presented no "convincing reason" for its failure to do so, the Court finds that it has waived its ability to raise it now.[17] *Maydak*, 218 F.3d at 769. Therefore, after applying the redactions described below, USMS must produce the remainder of pages 71–127 to Plaintiff.

### C. Redactions Are Appropriate Under the Privacy Exemptions

While the Court finds that pages 71–127 are not enjoined from disclosure based on the sealing orders or subject to withholding under Exemption 3, as noted in *Woodward II*, the Court recognizes that this page range does contain information that may be permissibly redacted under one or more of the privacy exemptions—Exemptions 6, 7(C) and 7(F).[18] 2022 WL 296171, at

---

[17] Because the Court finds that USMS waived its claim to Exemption 3, it does not reach the question of whether or the extent to which Exemption 3 would in fact shield pages 71–127 from disclosure.

[18] Exemption 6 protects from disclosure records that are "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) exempts "records or information compiled for law enforcement purposes" that, if disclosed, "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7). Exemption 7(F) exempts records "compiled for law enforcement purposes" the disclosure of which "could reasonably be expected to endanger the life or physical safety of any individual." *Id.*

*12 n.15.  USMS asserted these exemptions as to all documents in its initial *Vaughn* index, *see* 1st *Vaughn* Index at 3, and the Court held in *Woodward II* that redaction of personally identifying information and telephone numbers for law enforcement and third parties was proper because the privacy interests outweighed any public interest in disclosure, *Woodward II*, 2022 WL 296171, at *4, 9.  In accordance with the Court's ruling, USMS then made line-by-line redactions to pages 71, 79, 104, 118, and 119, which Plaintiff does not contest.  *See* Pl.'s Cross-Mot. at 30 ("Plaintiff does not dispute that the USMS is entitled to follow the Court's previous decision[.]").  As the remainder of pages 71–127 also appears to contain similar personally identifying information, including names, telephone numbers, and license-plate numbers of law enforcement and third parties, redaction of this information pursuant to the privacy exemptions is appropriate before USMS provides an otherwise unredacted version of the records to Plaintiff consistent with this opinion.

## IV.  CONCLUSION

For the foregoing reasons, USMS's Motion for Summary Judgment (ECF No. 53) is **DENIED** and Plaintiff's Cross-Motion for Summary Judgment (ECF No. 56) is **GRANTED.** An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  December 27, 2022                                        RUDOLPH CONTRERAS
                                                                              United States District Judge